### Grand Trunk Railroad Company *v.* Richardson et al.

1. The erection of buildings by the permission of a railroad company within the line of its roadway by other parties, for convenience in delivering and receiving freight, is not inconsistent with the purposes for which the charter was granted; and a license by the company to such other parties is admissible to show its consent to the occupation of its premises.

2. The determination of an issue, as to whether the destruction of property by fire communicated by a locomotive was the result of negligence on the part of a railroad company, depends upon the facts shown as to whether or not it used such caution and diligence as the circumstances of the case demanded or prudent men ordinarily exercise, and not upon the usual conduct of other companies in the vicinity.

3. Where the statute of a State provides, that, "when an injury is done to a building or other property by fires communicated by a locomotive-engine of any railroad corporation, the said corporation shall be responsible in damages for such injury," and have an insurable interest in such property "along its route," — *Held*, that the phrase "along its route" means in proximity to the rails upon which the locomotive-engines run; and that the corporation is liable for such an injury to buildings or other property along its route, whether they are outside of the lines of its roadway, or lawfully within those lines.

4. In an action for such an injury, evidence was offered by the plaintiff, that, at various times during the same summer before the fire in question occurred, the defendant's locomotives scattered fire when going past the buildings, without showing that either of those which he claimed communicated the fire in question was among the number, or was similar to them in its make, state of repair, or management. *Held*, that the evidence was admissible, as tending to prove the possibility, and a consequent probability, that some locomotive caused the fire, and to show a negligent habit of the officers and agents of the corporation.

5. The statute applies to an injury to such buildings and property which is caused by fire spreading from other buildings to which it was first communicated by the locomotive.

ERROR to the Circuit Court of the United States for the District of Vermont.

This is an action by the defendants in error to recover damages for the destruction of their saw-mill, lumber-shed, store, boarding-house, manufactured lumber, and other personal property, by fire, alleged to have been communicated by a locomotive-engine of the plaintiff in error on the seventh day of June, 1870.

It was conceded on the trial that the railroad was duly laid out, located, and surveyed, six rods in width, under a charter granted by the legislature of the State of Vermont to another company ; and that, about the year 1853, the railroad, with all the property, rights, and privileges of that company, came into the possession of the plaintiff in error, who had since that time continued to operate the same.

It was further conceded, that the saw-mill, lumber-shed, and store of the defendants in error, when consumed, stood in part upon the company's land, having been erected and placed there after the plaintiff in error came into possession of the railroad.

The defendants in error gave evidence that their mill, lumber-shed, and store were thus erected in part upon the company's land in 1854, and had been occupied by them from that date to the time of the fire ; that these buildings were so erected near the railway-track for the purpose of delivering and receiving freight ; that, soon after the mill was built, the plaintiff in error constructed a side track near to its main track, along the platform of the mill and lumber-shed, and up to the end of the mill, and the side track had been used since that time in loading lumber upon the cars ; that there was a platform extending from the store of the defendants in error nearly to the main track of the railroad, and that the company was accustomed to deliver freight from its cars at said store.

The defendants in error gave in evidence a receipt, dated North Stratford, Oct. 27, 1870, and signed by the station-agent at that place, for one dollar, in payment of land-rent at their mill for the year ending Oct. 31, 1870.   It appeared that this rent was charged by the company at the suggestion of its engineer having the general charge of the road-bed on that division of the road where the said mill, shed, &c., were located ;

and that the engineer, before the date of the receipt, had requested Mr. Richardson, one of the defendants in error, to pay the company a nominal rent for the use of the land which they were occupying, in order to prevent the latter from acquiring or claiming right thereto by adverse possession; that they had assented to this request, and, at the date of the receipt, the station-agent presented a bill for the rent against them, which purported to come from the company's principal office in Montreal; and thereupon Richardson paid the rent, and took the receipt. They never had any writing, except as above stated, authorizing them to erect or maintain said buildings on the land of the corporation, or to occupy said land or buildings. All the foregoing testimony bearing upon the matter of a license was seasonably objected to as incompetent; but the same was admitted, subject to exception.

The court thereupon held that the company's evidence would authorize the jury to find a license to maintain the said buildings, and occupy the land; to which no exception was taken.

The following provisions of the General Statutes of Vermont (ch. 28, sects. 78, 79) were relied upon as authorizing the right to recover: —

"Sect. 78. When any injury is done to a building or other property by fire communicated by a locomotive-engine of any railroad corporation, the said corporation shall be responsible in damages for such injury, unless they shall show that they have used all due caution and diligence, and employed suitable expedients to prevent such injury.

"Sect. 79. Any railroad corporation shall have an insurable interest in such property as is mentioned in the preceding section along its route, and may procure insurance thereon in its own name and behalf."

The evidence tended to show that the fire was communicated from one of two locomotive-engines belonging to the plaintiff in error, the first drawing a passenger-train westerly, passing about half-past one o'clock in the afternoon the mill of the defendants in error; and the other, drawing a freight-train easterly, passing it about four o'clock the same afternoon. The mill and other property were situated in the town of Bruns-

wick, Essex County, Vt., about five miles westerly from North Stratford Station, on the Connecticut River, in New Hampshire, and about twelve miles easterly from the Island Pond Station, in Vermont.

One-half to three-fourths of an hour after the last-mentioned train passed by the mill, the fire was discovered burning on the westerly end of a covered railroad-bridge, which was one hundred and ten feet long.  Witnesses testified, in substance, that a strong wind was blowing at the time, which carried the fire through the bridge with great rapidity, consuming it entirely, and setting on fire the saw-mill, the north-westerly corner of which was located within twelve or fifteen feet of the south-easterly corner of the bridge, and about the same distance from the main track of the railroad; that it was a very dry time, and, by reason of the wind blowing the fire through and from the bridge, it caught upon the saw-mill and consumed it, and was blown and carried thence to the other buildings and property sued for, consuming the same.

The defendants in error also claimed to recover the value of a large quantity of manufactured lumber, consisting of headings and boards which were piled upon and near the roadway, and burned.  The headings were piled in the lumber-shed and on the adjoining platform, awaiting transportation.  The boards were stuck up in the mill-yard to dry, for the purpose of being manufactured into headings, and extended back from the road-way at the lumber-shed in a southerly direction.

The plaintiff in error seasonably objected to the admission of the testimony bearing upon this point; but the court over-ruled the objection, and exception was taken.

When the defendants in error rested their case, the plaintiff in error moved that a verdict be rendered in its favor, for the following reasons: —

1. Because the damages claimed were too remote.

2. Because a large part of the property sued for was wrong-fully on their railroad, and not within the statutes of Vermont referred to; but the court denied the motion.

The evidence of the plaintiff in error tended to show that this fire was not communicated by either of the engines com-plained of; but, on the contrary, that the defendants in error

for a long time had maintained a constant fire at the end of their tramway, about 163 feet down stream on the same bank of the river, where the westerly end of the railroad-bridge rested, for the purpose of burning the edgings, stickings, slabs, and other waste material from the saw-mill ;. and that the fire which consumed their bridge and the property of the defendants in error ran along the bank of the river, or was blown by the wind to the westerly end of the bridge, where it was first discovered as aforesaid.

It having appeared that the company, before and at the time of this fire, had employed one Turcot to watch their bridge on account of the danger of its being burned, and the defendants in error having claimed on the trial that the company had not used all due caution and diligence and had not employed all suitable expedients to prevent the fire, for the reason, amongst others, that said Turcot (as the defendants in error contended) did not watch the bridge more closely just before the fire, the company offered to show that it was not the usual practice among railroads in that section of the country to employ a man to watch bridges like the one destroyed.; but, on objection, the court excluded this testimony, to which the company excepted.

After the plaintiff in error had rested its case, the defendants in error, subject to its exception, were allowed to prove, that at various times during the same summer, before this fire occurred, some of the company's locomotives scattered fire when passing the mill and bridge, without showing either that those which it was claimed communicated the fire in question were among the number, or that they were similar in their make, state of repair, or management, to said locomotives.

The plaintiff in error requested the court to charge, —

1. That if the jury found that the erection of plaintiffs' buildings or the storing of plaintiffs' lumber so near to the defendant's railroad track, as the testimony would show, was an imprudent or careless act, and that such a location of this property in any degree contributed to the loss which ensued, then the plaintiffs could not recover, even though the fire was communicated by the defendant's locomotive.

2. That at all events, under the circumstances disclosed

in this cause, it was incumbent upon plaintiffs to use due caution and diligence and to employ suitable expedients to prevent the communication of fire.

3. That the statute upon which the action is predicated does not apply to property located within the limits of the railroad, nor to personal property temporarily on hand.

The court refused to charge the jury on the first and third points as requested, but gave the charge requested on the second point, with the qualification, that there was no evidence in the case to which it had any application; to all which the defendant excepted.

The defendant also renewed its motion that a verdict be ordered in its favor for the reasons above set forth; which was again denied by the court, and the defendant excepted.

The court charged the jury that the burden of proof was upon the plaintiffs, in the first instance, to show that the fire in question was communicated from some of the defendant's locomotive-engines to the bridge; and that, if the jury were satisfied of that fact by a fair balance of evidence, then the plaintiffs were entitled to recover, unless the defendant had established, by a fair balance of evidence, that it had used all due caution and diligence and had employed all suitable expedients to prevent the fire; that the burden of proof was on the defendant as to the latter branch of the case; to which exception was taken.

The jury returned a verdict for $22,312.12 damages. The company moved to set aside the verdict and grant a new trial for reasons set forth in the bill of exceptions; which motion was overruled, and the company excepted.

*Mr. George A. Bingham* and *Mr. Ossian Ray* for the plaintiff in error.

The receipt, dated Oct. 27, 1870, for rent for the year ending Oct. 31, 1870, was incompetent evidence, because it was given subsequent to the fire, when the relations, rights, and liabilities of the parties at the time of such fire could not and ought not to be varied; nor was the transaction had for any other purpose than to show a surrender on the part of the defendants in error of any right they had gained by adverse possession.

It was competent for the plaintiff in error to show that it

was not the usual practice of railroad companies in that vicinity to employ men to watch bridges like that destroyed. The presumption is, that it exercised common care and prudence in preserving its property from destruction; and the evidence rejected certainly tended to show that it not only exercised such care, but that the employment of a watchman was an act of extraordinary and unusual precaution and diligence.

It was error to admit testimony showing that some of the company's locomotives had previously scattered fire, unless it was shown that either of those in question was among the number, or was similar in construction, state of repair, or management. *Boyce* v. *Cheshire R.R.*, 42 N. H. 97; *Phelps* v. *Conant*, 30 Vt. 277, 284; *Malton* v. *Nesbit*, 1 Car. & Payne, 70; *Hubbard* v. *Railroad Co.*, 39 Me. 506; *Standish* v. *Washburn*, 21 Pick. 237; *Collins* v. *Dorchester*, 6 Cush. 396; *Robinson* v. *Railroad Co.*, 7 Gray, 92, 95; *Jordan* v. *Osgood*, 109 Mass. 457. The effect of such evidence could not be otherwise than highly prejudicial to the plaintiff in error. *Sheldon* v. *Railroad Co.*, 29 Barb. 226; *Smith* v. *Railroad Co.*, 37 Mo. 287; *Railroad Co.* v. *Doak*, 52 Penn. St. 379.

Railway corporations cannot, without the consent of the legislature, surrender their franchises or any portion thereof, nor part with the control and occupancy of their roadway. 2 Gray, 404; 11 Allen, 65. A license, therefore, for the permanent use of ground, within their chartered limits, should be held void as contrary to sound public policy, and the intruder treated as a wrong-doer or trespasser, until, at least, his occupancy has ripened into a prescriptive right. *Troy & Boston R.R. Co.* v. *Potter*, 42 Vt. 265, 275, 276; *Jackson* v. *Rutland & Burlington R.R. Co.*, 25 id. 150–159; *Hurd* v. *Rutland & Burlington R.R. Co.*, id. 116, 121; *Richards* v. *Railroad Co.*, 44 N. H. 127, 136.

If the receipt was not competent, it is clear that the property of the defendants in error was wrongfully upon the roadway; and the company was liable for its loss only upon proof of gross negligence, according to common-law principles. *Jackson* v. *Rutland & Burlington R.R. Co.*, and *Hurd* v. *Rutland & Burlington R.R. Co.*, *supra; Bemis* v. *C. & P. R. R.R. Co.*, 42 Vt. 375; *Railroad Co.* v. *Anderson*, 20 Mich. 244.

As the property outside the roadway limits was destroyed solely by reason of the burning of that portion within them, the defendants in error cannot take advantage of their own wrong in placing their property upon the company's land.

The statute of Vermont has no application to property injured or destroyed *within* the limits of the roadway, *even if it is rightfully there.* Where property thus situated is destroyed, it is incumbent upon the plaintiffs to establish, not only the fact that the fire was communicated by the defendant's locomotives, but that it was through carelessness and negligence.

No fair construction of the seventy-eighth and seventy-ninth sections of chap. 28 of the General Statutes of Vermont gives the corporation a right to insure property wrongfully upon its premises. *Chapman* v. *Railroad. Co.*, 37 Me. 92.

The phrase "along its route," employed in the seventy-ninth section, clearly means by the side of, alongside, along the line of, lengthwise of, or near to the chartered limits of the roadway as surveyed and located, and not within, upon, over, or across the route. *Bailey* v. *White*, 41 N. H. 337; *Peaslee* v. *Gee*, 19 id. 273.

The act was passed for the purpose of aiding the adjoining land-owner, in case his property — located upon his own land, and not upon the railway — should be injured by fire from a locomotive, by casting the burden of proof on the corporation to show the exercise of due care and suitable expedients to prevent injury. *Metallic Co.* v. *Railroad Co.*, 109 Mass. 277; *Garris* v. *Scott*, 9 Exch. Law, 125; *Atkinson* v. *Waterworks Co.*, 9 id. 125; *Hall* v. *Brown*, 54 N. H. 495.

The plaintiff in error was entitled to a verdict because the damages claimed were too remote. *Ryan* v. *N. Y. Central R.R.*, 35 N. Y. 210; *Penn. R.R.* v. *Kerr*, 62 Penn. St. 353; *Hooksett* v. *Concord R.R.*, 38 N. H. 242–246; *Harrison* v. *Berkley*, 1 Strob. (S. C.) 548; *Morrison* v. *Davis*, 20 Penn. St. 171; *Insurance Co.* v. *Tweed*, 7 Wall. 44, 52; 3 Pars. on Contr. 198.

That was at least a question for the jury. *Holden* v. *Railroad Co.*, 30 Vt. 297, 303, 304; *Saxton* v. *Bacon*, 31 id. 540, 546, 547; *Toledo, &c. R.R. Co.* v. *Pindar*, 53 Ill. 447; *Fant* v. *Toledo, &c. R.R. Co.*, 59 id. 351; *Fairbanks* v. *Kerr*, 70 Penn.

St. 86; *Kellogg* v. *Milwaukee & St. Paul R.R. Co.*, reported in Whart. on Neg., sect. 154.

Also as to whether the defendants in error were not guilty of contributory negligence. *Kelsey* v. *Glover*, 15 Vt. 708, 714–716; *Allen* v. *Hancock*, 16 id. 230; *Cassedy* v. *Stockbridge*, 21 id. 391; *Robinson* v. *Cone*, 22 id. 213, 225; *Sessions* v. *Newport*, 23 id. 9; *Barber* v. *Essex*, 27 id. 62; *Briggs* v. *Taylor*, 28 id. 183; *Swift* v. *Newbury*, 36 id. 355, 358, 359; *Hill* v. *New Haven*, 37 id. 501; *Vinton* v. *Schwab*, 32 id. 612; *Folsom* v. *Underhill*, 36 id. 580, 591, 592; *Hodge* v. *Bennington*, 43 id. 450; *Willard* v. *Pinard*, 44 id. 34; *McCully* v. *Clark*, 40 Penn. St. 399; *Hackford* v. *Railroad Co.*, 53 N. Y. 654; *Gonzales* v. *Railroad Co.*, 38 id. 440; *Munger* v. *Railroad Co.*, 4 id. 349; *Railroad Co.* v. *Van Steinburg*, 17 Mich. 99; *Railroad Co.* v. *Mills*, 42 Ill. 407; *Railroad Co.* v. *Frazier*, 47 id. 505; *Railroad Co.* v. *Shanefelt*, 47 id. 497; *Railroad Co.* v. *Terry*, 8 Ohio St. 570; *Webb* v. *Railroad Co.*, 57 Me. 117; Bigelow's Lead. Cas. on Torts, 589, 596; Whart. on Neg., ch. 11, sects. 420–427; *Page* v. *Parker*, 43 N. H. 363; *Sioux City & P. R.R. Co.* v. *Stout*, 17 Wall. 657; *Wakefield* v. *C. & P. R. R.R. Co.*, 37 Vt. 330; Shearm. and Redf. on Neg., ch. 3, sects. 25–34.

If the defendants in error are entitled to stand in the position of licensees, or of persons going upon the railroad premises to transact business, as upon invitation, then each party is bound to use ordinary care in respect to the other, and the question of contributory negligence is for the jury. Saund. on Neg. 71–73; *Balch* v. *Smith*, 7 Hurlst. & Norm. 741; *Scott* v. *London Docks Co.*, 11 Law Times, N. s. 383; *Hounsel* v. *Smith*, 7 C. B. N. s. 738; *Barnes* v. *Wood*, 9 C. B. 392; *Eagan* v. *Railroad Co.*, 101 Mass. 315; *Shaw* v. *Railroad Co.*, 8 Gray, 45; *Bailey* v. *Railroad Co.*, 107 Mass. 496.

It is contended that as they, at best, occupied the company's land merely as licensees, the company was not involved in any liability as to the fitness of its use. Whart. on Neg., sect. 831; *Murray* v. *McLean*, 57 Ill. 378; *Sweeney* v. *Railroad Co.*, 10 Allen, 368; *Nicholson* v. *Railroad Co.*, 41 N. Y. 525, 530; *Kenney* v. *Railroad Co.*, 34 N. J. 513; *Zoebisch* v. *Tarbell*, 10 Allen, 385; *Chapman* v. *Rothwell*, El. B. & E. 668; *Hill* v. *New Haven*, 37 Vt. 501, 509; *Gahagan* v. *Railroad Co.*, 1 Allen,

187; *Telfer* v. *Railroad Co.*, 30 N. J. 188; *Michigan Central R.R. Co.* v. *Anderson*, 20 Mich. 244.

It was error for the court to refuse the charge that the statute has no application to property located within the limits of the railroad, or to personal property temporarily on hand. 1 Redf. on Rail. (3d ed.), sect. 126, p. 456; *Pratt* v. *Railroad Co.*, 42 Me. 579. The burden of proof remained with the defendants in error throughout the trial; and they were not entitled to recover without proving the negligence of the company, as well as the communication of the fire.

*Mr. Halbert E. Paine* for the defendants in error.

The competency and admissibility of the evidence bearing upon the question of license, authorizing the defendants in error to occupy the company's land and maintain buildings thereon, is clear upon both principle and authority. 1 Wash. Real Prop. 542, and cases cited; 2 Am. Lead. Cases, 563, and cases cited; 1 Hill. Real Prop. 302, and cases cited.

As the statute of Vermont not only imposes a liability upon railroad companies for the destruction of property near and adjoining the route of the railway, but expressly confers upon them an insurable interest in such property, and authorizes them to procure such insurance in their own name and behalf, the damages in the case at bar were not too remote; and the company is liable, whether the fire was communicated directly and immediately to the property destroyed, or through another building. *Insurance Co.* v. *Tweed*, 7 Wall. 44; *Webb* v. *R.R. Co.*, 49 N. Y. 420; *Piggot* v. *R.R. Co.*, 54 E. C. L. 229; *Smith* v. *R.R. Co.*, 5 Com. Pleas, 98; *Fant* v. *R.R. Co.*, 4 Chicago Legal News (1 Redf. Cas., 2d ed., 350); *R.R. Co.* v. *Stanford*, 12 Webb (Kan.), 354; *Kellogg* v. *R.R. Co.*, 26 Wis. 223; *Hart* v. *R.R. Co.*, 13 Mass. 99; *Perley* v. *R.R. Co.*, 98 id. 414; *Quigley* v. *R.R. Co.*, 8 Allen, 438; *Hooksett* v. *R.R. Co.*, 38 N. H. 242; *Cleveland* v. *R.R. Co.*, 42 Vt. 449.

The cases of *Ryan* v. *N. Y. Cen. R.R. Co.*, 35 N. Y. 210, and *Penn. R.R. Co.* v. *Kerr*, 62 Penn. St. 353, are contrary to the doctrine announced in all the other authorities bearing upon the question.

If the evidence offered by the plaintiffs below in relation to the scattering of fire by engines of the company at various

times previous to the fire, without showing that either of those alleged to have communicated the fire in question was among the number, or that said locomotives were similar in their construction, state of repair, or management, to those which were claimed to have scattered the fire complained of, was admissible to either maintain the plaintiffs' case or rebut the defendant's proof, no objection to its reception can be sustained here.

Evidence that two engines had crossed the bridge shortly before it and the buildings were burned was admitted without question, and manifestly on the ground that it tended to establish a probability that one of the engines communicated the fire. But why did it tend to establish such a probability? Not because there was any evidence before the jury showing, or tending to show, that their construction was such as to necessitate or admit of the scattering of sparks or coals. No such evidence had been adduced. It tended to show the probability that one of them communicated the fire, because the mind accepts the fact that the engines at a dry season crossed this long wooden bridge just before it was found to be on fire, as tending, of itself, to show a probability that the fire was communicated by one of them. It tended to show, not a *mere possibility* of such a result, but a possibility which was coupled with, or rather constituted an element of, a probability of more or less strength, that the fire was communicated to the bridge by one of the engines, because, at the present time, many locomotive-engines do in fact emit sparks or coals, and lack such devices as will perfectly prevent their escape; and such fact shows a probability, for the same reason and to the same extent that it shows a possibility, that the fire was so communicated. If the use of completely and invariably effectual safeguards had become universal, then the crossing of an engine might not show such a probability, any more than the crossing of a hand-car.

While the mere fact of the crossing of an engine shows such a probability, without affirmative proof that it scatters fire, so is evidence that such engine in fact scatters fire competent as tending to strengthen a probability shown by the mere fact of the crossing without such proof. In the present condition of railway equipment, without proof that the engine actually scat-

tered fire at the time, a presumption of more or less strength would arise, in case of a fire following the passage of these engines across the bridge, that they were not both provided with safeguards against the escape of fire which are at all times absolutely effectual; and, although the probability would be strengthened by the presence of proof that these engines actually scattered fire, it would not be wholly removed by the withdrawal of such proof. It was not necessary for the plaintiffs to show that the two engines which crossed the bridge just before the fire *were not* so constructed, or, as an alternative, to fail wholly in the attempt to establish a probability that they caused the fire; but it was incumbent on the defendant, in order to destroy the probability raised by proof that the engines had previously crossed the bridge, to show that they *were* so constructed. Under the circumstances, proof that several of the engines of the same road had been seen to scatter fire tends to strengthen the probability that the engines which crossed the bridge were without effective safeguards, and so occasioned the fire. Certainly the fact that a part of the engines of a railway company were unprovided with such safeguards raises a probability, not that the others were, but that they were not, so provided. There being a unity of management in a railway company, evidence that some of its engines are permitted to scatter fire impeaches that management, and raises a probability more or less strong as to the cause of the particular loss.

If evidence that two unknown engines crossed the bridge, a little before the fire, raised a probability, however slight, that the damage resulted from the negligent acts of the defendant, and was therefore competent, there can be no doubt that the further evidence that several unknown engines had scattered fire near the same time and place would tend to strengthen the probability so raised.

As the evidence offered would tend to show a possibility — which, under the circumstances, was tantamount to a probability — that the fire was communicated by one of the engines which crossed a little before its discovery, it was competent. Upon principle, this would seem to be the true doctrine; and it is supported by most, if not all, of the authorities. *Piggot*

v. *R.R. Co., supra; Field* v. *R.R. Co.,* 32 N. Y. 339; *Webb* v. *R.R. Co., supra; Cleaveland* v. *R.R. Co., supra; Burk* v. *R.R. Co.,* 7 Heisk. 456; *Garrett* v. *R.R. Co.,* 36 Iowa, 122; *Gandy* v. *R.R. Co.,* 30 id. 420; *R.R. Co.* v. *Williams,* 42 Ill. 356; *Smith* v. *R.R. Co.,* 10 R. I. 22; *Longabaugh* v. *R.R. Co.,* 4 Nev. 811; *Fitch* v. *R.R. Co.,* 45 Mo. 322.

If it had appeared that some of these engines did scatter fire, then the fact of the passage of the two engines would have established such a possibility and probability. The plaintiffs met any possible claim, that none of the defendant's engines used in the vicinity could scatter fire, by showing affirmatively that some of them did. The plaintiffs thereby established the possibility, and consequent probability, that the damage resulted from the negligent act of the defendant; and clearly fastened upon it the burden of showing that the particular engines which crossed the bridge before the fire were both so constructed, regulated, and operated as to prevent the scattering of fire. Proof that other engines have thrown fire as far as the building destroyed, offered in a case where the building is separated from the track, stands upon precisely the same footing as proof that other engines have "scattered fire," offered in a case where a railway bridge itself is first burned. The question in each case is, whether the fire can be thrown far enough to occasion the damage. It is thrown far enough when "scattered," in one case, as clearly as when thrown to the distant building destroyed, in the other.

The court properly refused to charge the jury, that if they found that the erection of the plaintiffs' buildings or the storing of their timber so near to the defendants' railway track was an imprudent or careless act, and that such a location of this property in any degree contributed to the loss which ensued, then the plaintiffs could not recover, even though the fire was communicated by the defendant's locomotive.

When a person, in the lawful use of his own property, places it in a situation of hazard and exposure near the line of a railway, he does not thereby lose his remedy for injuries occasioned by the negligent acts of the railway company. *Cook* v. *The Champlain Transportation Co.,* 1 Den. 91; *Fero* v. *R.R. Co.,* 22 N. Y. 215.

The rule releasing the defendant from liability on account of contributory negligence of the plaintiff is limited to cases where the negligent act or omission of the plaintiff is the proximate cause of the loss. *Flynn* v. *R.R. Co.*, 40 Cal. 18, and cases cited; *Lowell* v. *R.R. Co.*, 23 Pick. 31; *Littleton* v. *Richardson*, 32 N. H. 59; *Norris* v. *Litchfield*, 35 id. 271; *Ingersoll* v. *R.R. Co.*, 8 Allen, 438; *Davies* v. *Mann*, 10 M. & W. 545; *Richmond* v. *R.R. Co.*, 18 Cal. 357; *Kline* v. *R.R. Co.*, 37 id. 400; *Needham* v. *R.R. Co.*, id. 409; *Wright* v. *Brown*, 4 Ind. 98; *Kerwhacker* v. *R.R. Co.*, 3 Ohio St. 172; *R.R. Co.* v. *Elliott*, 4 id. 474.

The plaintiffs' failure to take *unusual* care of the property destroyed is no defence to the action. Shearm. Neg. (3d ed,) 35, 404, and cases cited; *Kellogg* v. *R.R. Co.*, 26 Wis. 223.

" Negligence of the plaintiff which precludes a recovery is where, in the presence of a *seen* danger (as where the fire has been set), he omits to do what prudence requires to be done, under the circumstances, for the protection of his property, or does some act inconsistent with its preservation. When the danger is *not seen*, but anticipated merely, or dependent on future events (such as the future continuance of defendant's negligence), plaintiff is not bound to guard against it by refraining from his usual course (being otherwise a prudent one) in the management of his property and business. In the exercise of his lawful rights, every person has a right to presume that every other person will perform his duty, and obey the law ; and it is not negligence for him to assume that he is not exposed to a danger which can only come to him through a disregard of the law on the part of some other person." *Kellogg* v. *R.R. Co.*, 26 Wis. 223, and cases cited.

The next exception is based upon the refusal of the court to charge the jury " that the statute upon which the action is predicated does not apply to property located within the limits of the railroad, nor to personal property temporarily on hand."

The circumstance that the property destroyed was located on the defendant's land by leave of the defendant, and without charge for rent, would not defeat the plaintiffs' right to recover. *R.R. Co.* v. *Derby*, 14 How. 485; *Steamboat New World et al.* v. *King*, 16 id. 469; *Ingersoll* v. *R.R. Co.*, 8 Allen, 440

It is probable that the second branch of this exception rests upon the case of *Chapman* v. *R.R. Co.*, 37 Me. 92. But if it were possible, in the absence of other authorities, to extend the scope of that decision so as to cover the broad, unqualified proposition, that the statute does not apply to personal property temporarily on hand, nevertheless the case of *Pratt* v. *R.R. Co.*, 42 id. 579, decided two years later by the same court, effectually and completely disposes of such a construction. *Trask* v. *R.R. Co*, 15 Gray, 71; *Perley* v. *R.R. Co.*, 98 Mass. 418; *Cleaveland* v. *R.R. Co.*, 42 Vt. 449; *Ross* v. *R.R. Co.*, 6 Allen, 87.

If there could be any doubt at common law respecting the correctness of the charge of the court on the tenth point, there can be none under the statute of Vermont.

Mr. Justice Strong delivered the opinion of the court.

The plaintiffs below were permitted to adduce evidence that those of the injured buildings which were within the lines of the roadway had been erected within those lines by the license of the company, for the convenience of delivering and receiving freight. The admission of this evidence is the subject of the first assignment of error; and in its support it has been argued that it was the duty of the railroad company to preserve its entire roadway for the use for which it was incorporated; that it had no authority to grant licenses to others to use any part thereof for the erection of buildings; and, therefore, that the license to the plaintiffs, if any was made, was void. Thus the basis of the objection to the evidence appears to be, that it was immaterial. We are, however, of opinion that it was properly admitted. If the buildings of the plaintiffs were rightfully where they were, if there was no trespass upon the roadway of the company, it was clearly a pertinent fact to be shown; and while it must be admitted that a railroad company has the exclusive control of all the land within the lines of its roadway, and is not at liberty to alienate any part of it so as to interfere with the full exercise of the franchises granted, we are not prepared to assert that it may not license the erection of buildings for its convenience, even though they may be also for the convenience of others. It is not doubted that the defendant might

have erected similar structures on the ground on which the plaintiffs' buildings were placed, if in its judgment the structures were convenient for the receipt and delivery of freight on its road.   Such erections would not have been inconsistent with the purposes for which its charter was granted.   And, if the company might have put up the buildings, why might it not license others to do the same thing for the same object; namely, the increase of its facilities for the receipt and delivery of freight? The public is not injured, and it has no right to complain, so long as a free and safe passage is left for the carriage of freight and passengers.   There is, then, no well-founded objection to the admission of evidence of a license, or evidence that the plaintiffs' buildings were partly within the line of the roadway by the consent of the defendant.   The objection to the mode of proof is equally unsustainable.   There was quite enough, without the receipt of Oct. 27, 1870, to justify a finding by the jury that the plaintiffs were not trespassers.   But the receipt itself was competent evidence.   It is true, it was given after the occurrence of the fire; but it was a mutual recognition by the company and by one of the plaintiffs that the occupation of the roadway by the buildings had been, and that it was at the time of the fire, permissive, and not adverse.   Taking the receipt, as the bill of exception shows, was the act of the defendant by its agent, the engineer who had charge of the road-bed.   It was, therefore, an admission by the company that there had been consent to the occupation.

The second assignment of error is, that the court excluded testimony offered by the defendant to show that the usual practice of railroad companies in that section of the country was not to employ a watchman for bridges like the one destroyed.   It is impossible for us to see any reason why such evidence should have been admitted.   The issue to be determined was, whether the defendant had been guilty of negligence; that is, whether it had failed to exercise that caution and diligence which the circumstances demanded, and which prudent men ordinarily exercise.   Hence the standard by which its conduct was to be measured was not the conduct of other railroad companies in the vicinity; certainly not their usual conduct.   Besides, the degree of care which the law requires in

order to guard against injury to others varies greatly according to the circumstances of the case.   When the fire occurred which caused the destruction of the plaintiffs' buildings, it was a very dry time, and there was a high wind.   At such a time, greater vigilance was demanded than might ordinarily have been required.   The usual practice of other companies in that section of the country sheds no light upon the duty of the defendant when run ring locomotives over long wooden bridges, in near proximity to frame buildings, when danger was more than commonly imminent.

The third assignment of error is, that the plaintiffs were allowed to prove, notwithstanding objection by the defendant, that, at various times during the same summer before the fire occurred, some of the defendant's locomotives scattered fire when going past the mill and bridge, without showing that either of those which the plaintiffs claimed communicated the fire was among the number, and without showing that the locomotives were similar in their make, their state of repair, or management, to those claimed to have caused the fire complained of. The evidence was admitted after the defendant's case had closed.   But, whether it was strictly rebutting or not, if it tended to prove the plaintiffs' case, its admission as rebutting was within the discretion of the court below, and not reviewable here.   The question, therefore, is, whether it tended in any degree to show that the burning of the bridge, and the consequent destruction of the plaintiffs' property, were caused by any of the defendant's locomotives.   The question has often been considered by the courts in this country and in England; and such evidence has, we think, been generally held admissible, as tending to prove the possibility, and a consequent probability, that some locomotive caused the fire, and as tending to show a negligent habit of the officers and agents of the railroad company. *Piggot* v. *R.R. Co.*, 3 M. G. & S. 229; *Sheldon* v. *R.R. Co.*, 14 N. Y. 218; *Field* v. *R.R. Co.*, 32 id. 339; *Webb* v. *R.R. Co.*, 49 id. 420; *Cleaveland* v. *R.R. Co.*, 42 Vt. 449; *R.R. Co.* v. *Williams*, 42 Ill. 358; *Smith* v. *R.R. Co.*, 10 R. G. 22; *Longabaugh* v. *R.R. Co.*, 4 Nev. 811.   There are, it is true, some cases that seem to assert the opposite rule.   It is, of course, indirect evidence, if it be evidence at all.   In this

case it was proved that engines run by the defendant had crossed the bridge not long before it took fire. The particular engines were not identified; but their crossing raised at least some probability, in the absence of proof of any other known cause, that they caused the fire; and it seems to us, that, under the circumstances, this probability was strengthened by the fact that some engines of the same defendant, at other times during the same season, had scattered fire during their passage. We cannot, therefore, sustain this assignment.

It is contended further on behalf of the defendant, that there was error in the court's refusal to direct a verdict in its favor because a large part of the property destroyed was wrongfully on their railway, and not within the purview of the statute of Vermont, on which the plaintiffs relied. If, however, we are correct in what we have heretofore said, it was not for the court to assume that any part of the property was on the roadway wrongfully, and to instruct the jury on that assumption; and, even if it had been wrongfully there, the fact would not justify its destruction by any wilful or negligent conduct of the defendant. In *Bains* v. *R.R. Co.*, 42 Vt. 380, it was said that a railroad company in the discharge of its duties, and in the exercise of its right to protect its property from injury to which it is exposed by the unlawful act or neglect of another, is bound to use ordinary care to avoid injury even to a trespasser. If this be the correct rule (and it cannot be doubted), how could the Circuit Court have charged as a conclusion of law that the plaintiffs could not recover because their property was wrongfully within the lines of the defendant's roadway?

Again: the court was asked to direct a verdict for the defendant, for the alleged reason that the damages were too remote. The bill of exceptions shows that the fire originated in the bridge of the defendant, and spread thence to the mill and other property of the plaintiffs; and we are referred to the rulings in *Ryan* v. *The New York Central R. W. Co.*, 35 N. Y. 210, and *Penn. R.R. Co.* v. *Kerr*, 62 Penn. St. 353, as showing, that, in such a case, negligently setting the bridge on fire is not to be considered the proximate cause. We do not, however, deem it necessary to inquire whether the doctrine asserted in those cases is correct. It is in conflict with that laid down in

many other decisions; indeed, in conflict, we think, with the large majority of decisions made by the American courts in similar cases. But we think the statute of Vermont has a direct bearing upon the defendant's liability, and contemplates such buildings and property as were destroyed in this instance. The buildings were along the route of the railroad; though some of them were, in whole or in part, within the lines of the roadway. It is obvious to us that the phrase "along its route" means in proximity to the rails upon which the locomotive-engines run. That the statute gave an insurable interest in the property, for the destruction of which the corporation was made liable, does not n essarily show that the only property intended was such as was outside the lines of the roadway. That, indeed, was comprehended; but property lawfully within the lines, which the company did not own, equally needed protection. The statute was designed to be a remedial one, and it is to be liberally construed. In Massachusetts, there is a statute almost identical with that of Vermont; and under it the Supreme Judicial Court of that State held, in *Ingersoll* v. *The Stockbridge & Pittsfield R.R. Co.*, and *Quigley* v. *Same*, 8 Allen, 438, that the company was liable to both the plaintiffs, though the fire communicated directly from the locomotive to Ingersoll's barn, and spread through an intervening shed, which stood partly upon the railroad location, to the barn of Quigley. The court said, "There is nothing in the statement to show that any fault of the plaintiff contributed to the loss, if the buildings were lawfully placed where they stood. The fact that a building stands near a railroad, or wholly or partly on it, if placed there with the consent of the company, does not diminish their responsibility in case it is injured by fire communicated by their locomotives. The legislature have chosen to make it a condition of the right to run carriages impelled by the agency of fire, that the corporation employing them shall be responsible for all injuries which the fire may cause." These cases are directly in point as to the reach of the statute. They show that it embraces buildings on the line of the roadway, and buildings injured by fire spreading from other buildings to which fire was first communicated from a locomotive. To the same effect is *Hart* v. *The Western R.R. Co.*, 13 Met. 99. And, if it be con-

ceded that the statute is applicable only to injuries of buildings and other property which the railroad company may insure, we do not perceive why it may not obtain insurance of buildings and property on its location with its consent. But, if the statute is applicable to the case, it is plain that the Circuit Court could not direct a verdict for the defendant for the reason that the damages were too remote.

Exception was taken at the trial to the refusal of the court to affirm the defendant's points; the first of which was, that "if the jury should find that the erection of the plaintiffs' buildings, or the storing of their lumber so near the defendant's railroad track, as the evidence showed, was an imprudent or careless act, and that such a location in any degree contributed to the loss which ensued, then the plaintiffs could not recover, even though the fire was communicated by the defendant's locomotive." We think the court correctly refused to affirm this proposition. The fact that the destroyed property was located near the line of the railroad did not deprive the owners of the protection of the statute, certainly, if it was placed where it was under a license from the defendant. Such a location, if there was a license, was a lawful use of its property by the plaintiffs; and they did not lose their right to compensation for its loss occasioned by the negligence of the defendant. *Cook* v. *Champlain Transp. Co.*, 1 Den. 91; *Ferc* v. *Railroad Co.*, 22 N. Y. 215. Besides, it was not for the court to affirm that even an imprudent location of the plaintiffs' buildings and property was a proximate cause of the loss.

The second request for instruction was, "that at all events, under the circumstances disclosed in the case, it was incumbent upon the plaintiffs to use due caution and diligence, and to employ suitable expedients to prevent the communication of fire." The request was broad; but the court gave the instruction asked, adding only that there was no evidence in the case to which it had any application; and we have been unable to find any in the record. A question is not to be submitted to a jury without evidence.

The third prayer for instruction was based on the assertion, that "the statute upon which the action was predicated does not

apply to property located within the limits of the railroad, nor to personal property temporarily on hand.". This view of the statute, as. we have already remarked, is not, in our judgment, correct as a general proposition, and certainly not in its application to a case where property is placed within the lines of a railway, by the consent of a railway company, for the convenience in part of its traffic.

It remains only to add, that we see no just ground of complaint of the affirmative instruction given to the jury. It was in accordance with the rule prescribed by the statute; and there. seems to have been no controversy in the Circuit Court respecting the question, whether, if the fire was communicated to th  bridge by a locomotive, it caused the injury to the plaint_is.          *The judgment is, therefore, affirmed.*