IDAHO & W. N. R. R. v. WALL et al.

(Circuit Court of Appeals, Ninth Circuit. February 6, 1911.)

No. 1,843.

1. RAILROADS (§ 275*)—INJURIES TO PERSONS WORKING ON OR ABOUT CARS—INSTRUCTIONS AS TO MANNER OF WORKING—WAIVER.

Where defendant railroad company had instructed decedent, a scaler for a lumber company, not to scale the logs on the ground as they were being loaded onto cars, but to do the scaling on the cars after the logs had been loaded, but both decedent and the scaler employed by the railroad company continued to scale on the ground up to the time decedent was struck by a log and killed, and it also appeared that, because the logs were loaded flush with the ends of the cars, a scaler could not measure the ends of the logs without standing on the drawbar which was unsafe, the order given by defendant that the scaler should not work on the ground was waived.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 873; Dec. Dig. § 275.*]

2. RAILROADS (§ 282*)—INJURIES TO PERSONS WORKING ON OR ABOUT CARS—ACTIONS—ISSUES.

Where, in an action against a railroad company for death of a log scaler employed by a sawmill company to scale logs as they were being

loaded onto cars by the railroad company for transportation to the mill, defendant neither in its answer nor by suggestion at the trial nor in its motion for a directed verdict raised the question that defendant's duty to decedent was limited by the fact that he was not an employé of defendant, but a bare licensee or trespasser, and the court charged that, while the decedent was not employed by defendant, yet in a measure the same rules applied to him as though he had been, and that the work of the two companies was so intimately commingled that the decedent was practically engaged with defendant's employés, defendant's duty to decedent if he had been a bare licensee or a trespasser was not in issue.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 921; Dec. Dig. § 282.*]

3. RAILROADS (§ 275*)—INJURIES TO PERSONS WORKING ON OR ABOUT CARS—CARE REQUIRED—APPLICATION OF RULE OF LIABILITY OF MASTER TO SERVANT.

Where defendant railroad company loaded and transported logs for a lumber company, and both the railroad company and the lumber company employed a separate scaler to scale the logs as they were loaded onto the cars, the scaler employed by the lumber company was so intimately connected with the work of the railroad company that the court, in an action for his death by being struck by a log alleged to have been negligently loaded, properly charged that the railroad company owed to decedent practically the same duty as it owed to its own employés, and was bound to furnish, as to him, reasonably safe appliances for carrying on the work.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 873; Dec. Dig. § 275.*]

4. RAILROADS (§ 275*)—INJURIES TO PERSONS WORKING ON OR ABOUT CARS—CARE REQUIRED.

Where decedent was employed by a lumber company to scale logs as they were loaded by defendant railroad company onto cars for transportation to the mill, defendant was bound to exercise ordinary care for decedent's safety, under the rule that a railroad company is bound to exercise such care as to all persons who may lawfully be on its premises transacting business with it.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 873; Dec. Dig. § 275.*]

5. RAILROADS (§ 282*)—INJURIES TO PERSONS WORKING ON OR ABOUT CARS—ACTIONS—NEGLIGENCE—QUESTION FOR JURY.

In an action for death of a log scaler by being struck by a log which fell from the hoisting tongs of a derrick used by defendant railroad company for loading the logs onto flat cars, evidence held to require submission to the jury of defendant's alleged negligence in permitting the log tongs to become so dull that they would not hold a log, and in failing to use a log chain in loading small logs.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 918; Dec. Dig. § 282.*]

6. RAILROADS (§ 282*)—INJURIES TO PERSONS WORKING ON OR ABOUT CARS—ACTIONS—CONTRIBUTORY NEGLIGENCE—INSTRUCTIONS.

A request that if decedent in scaling logs for a lumber company voluntarily placed himself in a dangerous position, while the logs were being loaded by defendant railroad company, and did so unnecessarily when there was another place where he could have performed his duty in safety, then plaintiffs could not recover for his death, was properly refused as pretermitting the question whether defendant was negligent in permitting the tongs with which the logs were loaded to become so dull and out of repair as to render their use dangerous, or in failing to use a

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

bunching chain in hoisting small logs like that being hoisted at the time decedent was struck and killed.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 921; Dec. Dig. § 282.*]

**7. RAILROADS (§ 282*)—INJURIES TO PERSONS WORKING ON OR ABOUT CARS—ACTIONS—CONTRIBUTORY NEGLIGENCE—INSTRUCTIONS.**

Decedent, a log scaler for a lumber company, was killed by the fall of a small log from the tongs of a steam log loader, as the log was being loaded onto one of defendant's flat cars. The court charged that it was the duty of one engaged in dangerous work to adopt the method that was least dangerous, and hence it might become important to determine whether it was less dangerous to scale on the cars as defendant contended or on the ground, but that, however the jury resolved the question, it was necessarily important for them to find whether defendant in hoisting such logs was negligent, and, if so, whether decedent in performing his duties observed such precautions as ordinarily prudent men observe to guard against consequences which might naturally be expected to result; that if the danger would have been perfectly apparent to a reasonably prudent and careful man, and decedent could by the use of ordinary care have avoided the danger, and still have performed his duties, then he could not recover. *Held*, that such instruction was correct, since plaintiffs were not barred, if decedent's death resulted from the negligence of defendant in hoisting the logs, either in an improper manner, or with dull tongs superadded to the ordinary danger of the situation.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 921; Dec. Dig. § 282.*]

**8. TRIAL (§ 260*)—INSTRUCTIONS—REFUSAL OF REQUEST.**

It is not error to refuse a request to charge covered by instructions given.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 651; Dec. Dig. § 260.*]

In Error to the Circuit Court of the United States for the Eastern Division of the Eastern District of Washington.

Action by Melissa Wall and others against the Idaho & Washington Northern Railroad. Judgment for plaintiffs, and defendant brings error. Affirmed.

Action by Melissa Wall for and on behalf of herself as surviving widow and as guardian ad litem for the three minor children of James Wall, deceased, to recover damages for the death of the said James Wall caused by the alleged negligence of the defendant.

The plaintiff in error is a railroad company operating a line of railroad between the cities of Newport in Idaho and Spokane in the state of Washington. At the time of the death of James Wall on October 31, 1908, this railroad was engaged in hauling logs for the Panhandle Lumber Company. The logs were delivered by the lumber company alongside of the defendant's tracks at a point about three or four miles south and west of the city of Newport, and were loaded by the defendant upon its cars for transportation to the mill of the Panhandle Lumber Company at Spirit Lake, Idaho. In loading the logs the defendant employed a large steam-driven log loader, carried upon a flat car. This loader consisted of a swinging arm or derrick, lifting chains, and hooks or tongs, and when in operation the hooks or tongs seized the logs on the ground, lifted them from their place by the side of the track, and carried them and deposited them upon the car. At whatever point the loading of the logs might be carried on two scalers were employed whose duty it was to measure the logs and so ascertain the quantity carried as they were placed on the cars. One of these scalers was employed by the railroad company and the other by the lumber company. For some time prior to October 31, 1908, James Wall had been employed by the Panhandle

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Lumber Company as a scaler at different points along defendant's track, where it was engaged in loading logs for the lumber company, and he was so employed on that day. The logs at that time were being loaded from the ground some 20 feet below the cars; the defendant's track being upon an embankment at that point, and the logs in a slight excavation by the side of the embankment. There was testimony tending to show that the scaling of the logs might be done either by the scaler standing on the car and measuring the logs after they were placed thereon, or by standing on the ground and measuring the logs before they were picked up by the loader; but whether it was safer to scale the logs then being loaded after they had been loaded on the cars was a subject of conflicting testimony. Prior to the accident all the scaling had been done on the ground. There was evidence tending to show that the general manager of the defendant had warned Wall that scaling on the ground was dangerous and should be done on the cars; that he had disregarded this warning and continued to scale on the ground. At the time of the accident Wall was standing on a pile of logs from which the logs were being taken by the loader. He had scaled a yellow pine log about 16 feet long and between 8 and 10 inches in diameter at the small end. The log had not been freshly cut. The tongs of the hoisting machinery were placed on the log and the log raised from the pile of logs where it had been lying. Wall was engaged in writing down the scale in a book which he held in his hand, and when the log had been raised a short distance it slipped from the tongs, and in falling it struck Wall and killed him. There was evidence tending to show that the tongs were dull, and for that reason failed to hold the log securely as they would have done if the points had been sharp and penetrated the wood so as to firmly grasp the log. The case was tried before a jury which rendered a verdict in favor of the plaintiffs for $5,000, upon which judgment was entered. The case is here upon writ of error.

Charles L. Heitman, Frank H. Graves, Will G. Graves, and Albert Allen, for plaintiff in error.

F. C. Robertson and Fred Miller, for defendants in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

MORROW, Circuit Judge (after stating the facts as above). The defendant has raised in this court the question as to the duty which the defendant owed to the deceased. It is contended that this duty was limited by the fact that the deceased was not an employé of the defendant, but was a bare licensee or trespasser on the premises where defendant was engaged in loading logs, and it is contended in this behalf that, while the defendant may be charged with having invited the deceased to the employment of scaling logs for the Panhandle Lumber Company as the logs were being loaded on the cars, the invitation was coupled with the instruction that the work of scaling the logs should be done on the cars; that, when the deceased disregarded these instructions and scaled the logs on the ground, he was no longer a licensee, but a trespasser to whom the defendant owed no duty beyond that of refraining from doing him a willful injury. It does not appear, however, that this instruction was insisted upon as a condition for the continuance of the work. The evidence shows that, notwithstanding the instructions or warning that it was dangerous to scale on the ground and that the scaling should be done on the cars, both scalers (the one employed by the defendant as well as the deceased) continued to scale on the ground up to the time of the accident. This evidence tends to show that the defendant waived the instruction for which there was apparent reason, as there was testi-

mony tending to show that the logs were loaded flush up with the end of the cars, and there was no place for the scaler to stand and measure the ends of the logs unless he stood on the drawbar connecting the cars; that the engine was always attached to the train as they loaded moving backwards and forwards, no warnings were given, and the scaler was liable to fall in between the cars. A witness on behalf of the plaintiff who was employed as a scaler testified that he was thrown off once and hurt, and he refused to scale on the cars any more. But, aside from this evidence, was the question of the limited duty of the defendant to the deceased an issue in the case?

The question does not appear to have been presented to the court below. The complaint charged that the defendant "negligently and carelessly permitted and suffered the tongs that were being used for the loading of said sawlogs to become dull, worn, and out of repair, so that the same would not readily hook into the said sawlogs which were then and there being loaded upon flat cars by the defendant, and negligently and carelessly attempted to lift a small sawlog with said tongs, derrick, and cable upon a flat car near where the said James Wall was engaged as aforesaid, said log being too small to be safely handled with said dull and defective tongs as aforesaid; that the proper manner of handling sawlogs was to chain two or three together, but said defendant and its employés negligently and carelessly attempted to load said small log with said old defective tongs well knowing that the same could not be safely loaded by said means or process, and, when the same had been lifted from the ground and was suspended in the air, the same, because it was too small and the tongs were dull, defective, and out of repair, slipped from said tongs and fell against and upon the said James Wall, killing him instantly."

The defendant in its answer denied the allegations of negligence and carelessness as charged in the complaint, and charged that Wall was guilty of contributory negligence in carelessly and unnecessarily undertaking and engaging in scaling logs at and below and beneath where the said logs were being hoisted; that the place was a dangerous place, and well known by Wall to be dangerous; and that he had been forbidden to scale logs in that place.

At the close of the testimony, the defendant moved the court to instruct the jury to return a verdict for the defendant on the ground that the deceased was guilty of contributory negligence which caused the injury; that he continued in the employment in which he was engaged at the place he was engaged with a knowledge of the dangers and assumed the risk of the employment. This motion was denied. No issue was raised in defendant's answer, and no suggestion was made either during the trial or in the motion for an instructed verdict that the duty which the defendant owed to the deceased was limited by the fact that he was not an employé of the defendant, but was a bare licensee or trespasser. The court instructed the jury that, while the deceased was not employed by the defendant, yet, in a measure, the same rules applied to him as though he had been; that the work of the two companies was so intimately commingled that the deceased was practically engaged with the employés of the defendant.

To this instruction no objection was made or exception taken by the defendant. This of itself was sufficient to eliminate any question as to the deceased being a bare licensee or trespasser. The further instructions of the court clearly indicated that the first question to be determined was whether the defendant had been guilty of negligence. If that question was determined against the defendant, then the remaining question was whether the deceased had been guilty of contributory negligence. For the purpose of determining these questions, the court instructed the jury that the defendant was required to furnish reasonably safe appliances for carrying on the work which it was engaged in. This, it was said by the court, had often been referred to as the rule of ordinary care. This duty the court further said could not be delegated to others and avoid responsibility, for it was a positive duty which the law imposed. It did not mean that the defendant was an insurer of the safety of the deceased. It meant that the defendant was under obligation to use that degree of skill, care, and diligence in furnishnig safe appliances that reasonably careful and prudent persons ordinarily use. If it failed in this regard, the court said the defendant was guilty of negligence; if it performed this duty, then its responsibility ended, and it was not accountable for the results. In referring to the question of contributory negligence charged against the deceased, the court said:

"If you find the defendant negligent, it does not necessarily follow that, because the deceased lost his life, there can be a recovery here. It sometimes occurs that both parties are negligent. When such a state of facts is presented, the inquiry is as to the immediate, proximate, or directly moving cause of the accident. * * * Your inquiry therefore should be as to how this injury was brought about—what was the cause of it—was it the defendant's want of care in the respects charged in the complaint, or was it the failure of the deceased to take precautions for his own safety which reasonably prudent men ordinarily take? Remembering now that the deceased himself was under the same obligation to watch out for his own safety as the defendant was to watch out for it, it is for you to say whether the negligence of the defendant, if you find it was negligent, was the proximate cause of the injury, or was the negligence of the deceased one of the proximate causes, and did it directly contribute to the unfortunate result? If the evidence shows it did, there can be no recovery."

If the defendant wished to rely upon any supposed limitation of its duty to the deceased by reason of the fact that he was not in its actual employment at the time of his death, but was a trespasser or bare licensee, it was for the defendant to raise that issue by its answer, as the burden was upon the defendant to establish that fact. Failing to do this, it was not an issue in the case, and the evidence justified the court in instructing the jury that the work of the company employing the defendant was so intimately commingled with the work of the defendant that the deceased was practically engaged with the employés of the defendant; that is to say, the duty the defendant owed to the deceased was practically the same it owed to its own employés, and that was to furnish reasonably safe appliances for carrying on the work in which it was engaged.

We do not wish to be understood as intimating that a different result might have been reached had the defendant's theory of its duty

to the deceased been presented as an issue to the court below. The deceased was lawfully upon the premises, where he was killed, on business with the defendant. In such case the rule is that the railway company is chargeable with the exercise of ordinary care towards all persons who may lawfully be upon the premises transacting business with it. In Cooley on Torts (3d Ed.) pp. 1258, 1259, the rule is stated as follows: When one "expressly or by implication invites others to come upon his premises, whether for business or for any other purpose, it is his duty to be reasonably sure that he is not inviting them into danger, and to that end he must exercise ordinary care and prudence to render the premises reasonably safe for the visit." This rule was expressly approved by the Supreme Court of the United States in Bennett v. Railroad Co., 102 U. S. 577, 580, 26 L. Ed. 235. The present case was submitted to the jury upon the theory that the defendant was chargeable with ordinary care; a less degree of care would not have been required had the deceased been a trespasser. Grand Trunk R. R. Co. v. Richardson, 91 U. S. 454, 471, 23 L. Ed. 356. We are therefore of the opinion that in any view of the evidence the defendant was not prejudiced by the theory upon which the case was tried and submitted to the jury.

There was evidence tending to show that the tongs used by the defendant at the time of the accident were dull and did not hook into the log that was being lifted, and that, because the tongs were dull, the log slipped from the tongs, and, falling to the ground, killed Wall. There was also evidence tending to show that in hoisting small sawlogs it was safer to chain two or three together rather than hoist them singly. This was evidence tending to show that the dull tongs or the method of hoisting the logs singly was the proximate cause of the injury, and that by reason of the defendant's negligence in using tongs in that condition or in hoisting the logs singly it was liable for the consequences, unless the deceased was guilty of contributory negligence with respect to that danger, and such contributory negligence was the proximate cause of the injury. This was a question of fact for the jury to be determined under appropriate instructions. The defendant requested the court to instruct the jury:

"That if the jury found from the evidence that the deceased, James Wall, in scaling logs for the Panhandle Lumber Company voluntarily put himself into a dangerous place, and did so unnecessarily when there was another place where he could have performed his duty which was safe, then I instruct you that the plaintiffs cannot recover, and you should return a verdict for the defendant."

The refusal of the court to give this instruction is assigned as error. The instruction was not sufficient. It omitted all reference to the question whether the defendant was guilty of negligence in permitting the tongs to become dull and out of repair or in failing to use the bunching chain in hoisting small logs.

In the instruction which the court gave the jury this question was properly called to their attention:

"It is the duty of one engaged in dangerous work to adopt that method which is the least dangerous; hence under some phases of this case it might become an important inquiry on your part as to which was the less danger-

ous—scaling upon the cars or upon the ground. Again, however you resolve that question, it would necessarily be important to find whether the defendant, through the defects in the tongs or failure to use the bunching chain for hoisting logs, was guilty of negligence, and, if so, did the deceased in performing his duties observe those precautions which ordinarily prudent men observe to guard against consequences which might naturally be expected to result? If the danger would have been perfectly apparent to a reasonably careful and prudent man, and the deceased could by the use of ordinary care himself have avoided the injury and still have performed his duties, then, as you have already been advised, there could be no recovery."

There was unquestionably a certain amount of danger in the work in which the deceased was engaged; but there was evidence that, superadded to this danger, was the danger arising from the dull tongs used by the defendant in hoisting the logs on board the cars and in hoisting the logs singly. Was this danger apparent to a reasonably careful and prudent man? This was the question the jury was called upon to determine, under proper instructions, and such instructions were given.

The distinction required to be made between a situation that is general in its character and a superadded situation that is charged to be the proximate cause of the injury has been stated in many cases, but in none more clearly than by Lord Chief Justice Cockburn in Gallagher v. Humphrey, 6 L. T. (N. S.) 684, 685, a case somewhat similar to the present one. In that case a passageway over defendant's premises was used to the knowledge of the defendant by the plaintiff and others to pass and repass and use the same as a way to certain wharves. The plaintiff on the day when the accident happened was on his way through the passage as usual and passed under a crane erected on the defendant's premises and there employed in lowering barrels of sugar from a warehouse belonging to the defendant. As the plaintiff was passing the crane, a chain connected with the crane broke, and a barrel of sugar fell upon him, inflicting the injuries with respect to which the action was brought against the defendant for damages. There was evidence tending to show that the crane was negligently operated by the defendant. It was contended on the part of the defendant that the passageway was the defendant's private property and no one had any right to be there without his express or implied permission. It was also contended that the lowering of heavy goods from the warehouse by cranes was manifestly dangerous business, and persons using the way took upon themselves whatever risks might be incidental to that business. Chief Justice Cockburn refused to determine the liability of the defendant upon the narrow ground raised by the question whether the plaintiff had the permission of the defendant to pass along the way, but placed the decision upon the answer to the broader question whether the evidence of defendant's negligence in operating the crane did not determine his liability. The Lord Chief Justice said:

"I quite agree that a person who merely gives permission to pass and repass along his close is not bound to do more than allow the enjoyment of such permissive right under the circumstances in which the way exists; that he is not bound, for instance, if the way passes along the side of a dangerous ditch or along the edge of a precipice, to fence off the ditch or precipice.

The grantee must use the permission as the thing exists. It is a different question, however, where the negligence on the part of the person granting the permission is superadded. It cannot be that, having granted permission to use a way subject to existing dangers, he is to be allowed to do any further act to endanger the safety of the person using the way. The plaintiff took the permission to use the way subject to a certain amount of risk and danger, but the case assumes a different aspect when the negligence of the defendant—for the negligence of his servants is his—is added to that risk and danger. The way in question was a private one leading to different wharves. * * * The plaintiff is passing along the passage by permission of the defendant, and, though he could only enjoy that permission under certain contingencies, yet when injury arises not from any of those contingencies, but from the superadded negligence of the defendant, the defendant is liable for that negligence as much as if it had been upon a public highway."

The refusal of the court to give a second instruction in the same general terms as the one just referred to is assigned as error. We think the instructions given by the court stated the law applicable to the evidence in the case.

The judgment of the lower court is therefore affirmed.