[No. 494. Decided October 11, 1892.]

JOHN B. COGSWELL, *Respondent*, v. WEST STREET AND NORTH END ELECTRIC RAILWAY COMPANY, *Appellant*.

APPEAL — STATEMENT OF FACTS — CARRIERS — LIABILITY FOR TORTS OF OTHERS OPERATING ROAD — PASSENGER — INSTRUCTIONS — DEGREE OF CARE REQUIRED — PLEADING AND PROOF — CONTRIBUTORY NEGLIGENCE—REBUTTAL EVIDENCE—EXCESSIVE DAMAGES.

Where a statement of facts proposed for settlement is a stenographer's report of the trial, to which neither the respondent nor the judge proposes any amendment, neither party is required to attend before the court at the time fixed for settlement, and the statement is sufficient on appeal, although the court may certify thereto on a day later than that fixed in the notice of settlement.

Common carriers obtaining franchises from the public, by either special or general legislation on the part of the state or municipal corporations, and upon whom in return therefor is cast the burden of certain duties, cannot, by means of any lease or other contract for the operation of their means of transportation or the management and control of their right-of-way, relieve themselves from liability for torts committed by their lessees, or the parties with whom they specially contract.

Where a person gets upon a street car for the purpose of becoming a passenger, expecting and willing to pay fare, he becomes a passenger for hire although the conductor, owing to the crowded condition of the car, may fail to collect the fare from him.

Error cannot be predicated upon the omission of the court to define the terms "diligence," "negligence" and "extraordinary care" employed in instructions to the jury in an action for personal injuries, when the party complaining of such omission has failed to ask the court to define the terms.

In an action against an electric railway company for injuries resulting from the negligence of its agents or employés, it is not re-

roneous to charge the jury that defendant is liable to plaintiff if the injury done him could have been avoided by extraordinary care and vigilance on the part of defendant, its agents and employés, as a higher degree of care is required in the operation of electric railways than in that of horse cars and stage coaches.

Under an allegation in a complaint for damages that the defendant so negligently and unskillfully conducted itself in the management of its car that through the negligence of defendant and its servants in guiding the car plaintiff was injured, it is admissible to prove defects in the brake rod of the car.

In an action against an electric railway company, the defendant requested the court to charge as follows: "The defendant is not chargeable with negligence by reason of the position of the plank by which the plaintiff was struck, unless the jury find either that the defendant caused or permitted the plank to be placed in a dangerous position near the track, or failed to inspect the track and its vicinity diligently and frequently prior to the accident," which request was granted with this addition: "Or that the motorman or the person who was running the car upon which plaintiff was riding at the time of the injury complained of, could not by the exercise of a high degree of care have seen the plank which struck plaintiff in time to have prevented the running of said car into or against said plank." *Held,* That the defendant cannot complain of the addition as tending to divert the minds of the jury from the point of the instruction asked, inasmuch as the court had already charged at defendant's request that the plaintiff must show by a preponderance of the evidence that the defendant's servants were negligent in guiding the car on which the plaintiff rode, or in keeping the roadbed and track in proper and safe condition, or in placing or leaving a heavy plank near its track so as to project over the roadbed far enough to strike and hurt the plaintiff.

Where the franchise under which an electric railway is operated limits the speed of the cars to ten miles an hour, an instruction is properly refused which asks the court to charge that the jury are to determine, without reference to the franchise, whether the speed at which the car was running at the time of the accident amounted to negligence.

Where a passenger upon defendant's car is compelled by the crowded condition of the car to stand upon the foot board, it being a common thing for passengers upon defendant's cars to ride in that way, he is not guilty of contributory negligence for injuries received by being struck in the leg by a heavy plank which projected a few feet above defendant's roadbed.

The admission or exclusion of evidence in rebuttal being a matter within the discretion of the trial court, the introduction in re-

buttal of merely cumulative evidence cannot be held to be an abuse of such discretion.

Plaintiff, in an action for personal injuries, recovered judgment for $7,000 for injuries to his right knee, from which he was still suffering pain at the time of the trial, and was apparently incapacitated from following his vocation of carpentering. The evidence was conflicting as to whether the injury would prove permanent or not. The actual damage suffered by plaintiff was $1,000 for loss of time and $300 for medical services and nursing. *Held*, That, in consideration on the one side of the possibility of further trouble with plaintiff's knee, and on the other side that he is not incapacitated from performing labor in many other vocations of life than that of a carpenter, a judgment of $5,000 would be ample compensation for plaintiff's actual injury. (DUNBAR, J., dissents.)

*Appeal from Superior Court, King County.*

*Burke, Shepard & Woods,* and *Charles Shepard,* for appellant:

The defendant was not related as a common carrier to the plaintiff. It was not operating the road and was not liable for any accidents occurring on it. *Quarman v. Burnett,* 6 Mees. & W. 499; *Allen v. Hayward,* 7 Q. B. 960; *Milligan v. Wedge,* 12 Ad. & E. 737; *Blake v. Ferris,* 5 N. Y. 48; *King v. New York, etc., R. R. Co.,* 66 N. Y. 181; *Hexamer v. Webb,* 101 N. Y. 377; *Hilliard v. Richardson,* 3 Gray, 349; *Linton v. Smith,* 8 Gray, 147; *De Forrest v. Wright,* 2 Mich. 368; *Reed v. Allegheny,* 79 Pa. St. 300; *Hughes v. Railway Co.,* 39 Ohio St. 461; *Hart v. New Orleans, etc., R. R. Co.,* 4 La. An. 261; *New Orleans, etc., Ry. Co. v. Reese,* 61 Miss. 581; *Boswell v. Laird,* 8 Cal. 469; *Railroad Co. v. Hanning,* 15 Wall. 649; *Smith v. Simmons,* 103 Pa. St. 32; *Cunningham v. Railway Co.,* 51 Tex. 503.

The plaintiff was not in fact a passenger; because he did not pay or offer to pay his fare. *Gardner v. New Haven, etc., Co.,* 51 Conn. 143; *Price v. Pennsylvania Ry.,* 96 Pa. St. 267.

It was contributory negligence on the part of plaintiff in

standing on the foot board.  *Parker v. Adams*, 12 Met.
415;  *Hayes v. Forty-Second St., etc., R. R. Co.*, 97 N. Y.
259;  *Craighead v. Brooklyn City R. R. Co.*, 25 N. E. Rep.
387;  *Chicago, etc., Ry. Co. v. Klauber*, 9 Ill. App. 613;
*Railroad Co. v. Hoosey*, 99 Pa. St. 492;  *Hickey v. Rail-
road Co.*, 14 Allen, 430;  *Torrey v. Railroad Co.*, 18 N. E.
Rep. 213;  *Railway Co. v. Carroll*, 5 Ill. App. 201.

*James B. Howe*, and *J. W. Corson*, for respondent:

The defendant having been chartered as a common car-
rier, and being the owner of the franchise under which the
road was being operated, and being the owner of the road,
it could not in any way relieve itself from responsibility
for the operation of the road.    Any person or company
operating the road was the agent of defendant and not an
independent contractor.  *Illinois Central R. R. Co. v.
Barron*, 5 Wall. 90;  *Nelson v. Vermont, etc., R. R. Co.*, 26
Vt. 717;  *Balsley v. St. Louis, etc., R. R. Co.*, 119 Ill. 68;
*Railroad Co. v. Mayes*, 49 Ga. 355;  *Pennsylvania Co. v.
Ellett*, 132 Ill. 654;  *Ricketts v. Chesapeake, etc., Ry. Co.*,
33 W. Va. 433;  *Lakin v. Willamette Valley, etc., R. R.
Co.*, 13 Or. 436.

The fact that plaintiff was injured before being called on
to pay his fare cannot defeat his right to recover.    He was
ready and willing to pay, and the evidence proved him to
have been a passenger.  Patterson, Ry. Acc. Law, p. 444;
*Topeka City Ry. Co. v. Higgs*, 38 Kan. 375.

Under a general allegation of negligence other acts of
negligence besides those specifically alleged may be proved.
*Indianapolis R. R. Co. v. Horst*, 3 Otto, 291;  *Davis v.
Guarnieri*, 45 Ohio St. 470;  *Clark v. Chicago, etc., Ry. Co.*,
15 Fed. Rep. 588;  *Meek v. Pennsylvania Co.*, 38 Ohio St.
632;  *Edgerton v. New York, etc., R. R. Co.*, 39 N. Y. 227;
*Northern Pacific R. R. Co. v. O'Brien*, 1 Wash. 599;  *Cun-
ningham v. Union Pacific Ry. Co.*, 4 Utah, 206.

The opinion of the court was delivered by

STILES, J.—In this cause due notice was given of the time and place of settling the statement of facts, but upon the day fixed, the appellant, through what the court below deemed an excusable inadvertence, failed to call the matter to the attention of the court.    Four days later, after notice to the respondent, the court entertained a motion to enter a *nunc pro tunc* order, as of the date fixed for the settlement, adjourning the proceeding.    The respondent appeared specially for the purpose of objecting that the court had lost jurisdiction of the matter, which objection the court overruled, and certified the statement.    While we think the fact that a *nunc pro tunc* order was made could have no effect to assist the appellant, unless in fact an order was made at the date set for settling the statement of facts, the entry of which had been omitted, still in this cause it cannot deprive it of its right to be heard.    The proposed statement of facts was a stenographer's report of the trial, to which respondent proposed no amendments whatever. Neither party in such a case was required to attend before the court, unless the court itself had seen fit to make some change in the proposed statement; therefore the fact that either the clerk or party inadvertently failed to call the statement to the court's attention on the particular day could have no effect upon the power of the court, or the judge, to certify the statement.    To all intents and purposes it was a submission of the cause upon an agreed statement of facts.

The first error complained of in this case is that the court below, by its rulings upon the admission of testimony, and its charge to the jury, deprived the appellant of its defense that the car upon which the respondent was injured was not being operated by it, but by a construction company with which it had a contract for electrical equipment of its

railroad. It is a well established principle of the law governing common carriers which obtain certain rights or franchises from the public by either special or general legislation on the part of the state or municipal corporations, and upon whom in return therefor are cast the burden of certain duties, that they cannot by means of any lease or other contract for the operation of their means of transportation or the management and control of their tracks and right-of-way, relieve themselves from liability for violations of contracts or the public law or for torts committed by their lessees or the parties with whom they specially contract. At the same time it is an equally well understood rule that a corporation or a private person standing in such a relation to the public, is not liable for wrongs done by an independent contractor who undertakes the construction of the works necessary and proper to the operation of the proposed improvement. In this case the answer admitted that the appellant was the owner of a railroad known as the West Street & North End Electric Railway, in the City of Seattle, together with the road bed, track, cars and other appurtenances thereunto belonging, but it denied that it was a common carrier of passengers thereupon for hire, and pleaded affirmatively that at the date of the alleged injury it had a contract with an electrical construction company, under which the latter was to equip the road with electrical appliances, engines, cars and other necessary machinery, and that under that contract the construction company had contracted to operate the road satisfactorily for at least ten days before it could require payment for the equipment. It also claimed that the car in question and the road was then being operated by the construction company, and that it had not yet transferred or delivered the line of railway completed and equipped according to the contract, to the appellant. Had this been a car which was being run backward and forward over the

line by the construction company, carrying material, or for any other purpose in connection with the equipment of the line, or for the purpose of testing its working condition, the contention of the appellant might have been sustained, but the car in question was a passenger car which was being operated for profit between Seattle and the town of Ballard. It was run upon a time table, and was manned by the usual conductor and motorman. The public were invited to take passage thereon upon payment of the usual street car fare, and in fact at the time of the accident it was carrying a load of upwards of eighty passengers.

Out of a great number of cases which were cited to our attention by both sides we find but two which are directly pertinent upon this point. The first is *Cunningham v. International Railroad Co.*, 51 Tex. 503. In that case a passenger was carried by a construction train operated by independent contractors for the building of the road, without the knowledge of the railroad company, and against its express prohibition, and it was held that the railroad company was not liable. The other case is that of *Lakin v. Willamette, etc., R. R. Co.*, 13 Or. 436 (11 Pac. Rep. 68), which is a case on all fours with this one, with the exception that there the railroad was an ordinary steam railroad. The court said:

"The defendant may contract for the construction of its road, but it cannot escape liability for injuries to passengers caused by the negligence of another which it permits or allows to use its road for the purposes of traffic. In such case, as regards the public, those who operate the road must be regarded as the agents of the corporation. This doctrine is in accordance with sound public policy; for it would certainly be against the public interest to allow corporations, invested by the state with important franchises and privileges, and incorporated to discharge a public duty as well as to subserve a private benefit, to shirk its responsibilities, or shift its duties and liabilities to other, perhaps, irresponsible parties. Except as authorized by

statute, it cannot relieve itself from responsibility for the exercise of its corporate powers and franchises."

The two cases referred to, it seems to us, express the correct principle applicable in such instances, and under that principle there was no error on the part of the court as to the point in discussion.

2. Appellant claimed a failure of the plaintiff's case because he did not prove that he had paid his fare. His proof was to the effect that he could not remember whether he had paid his fare or not, but he believed that he did not, because the conductor did not call upon him for it, but he testified that he got upon the car for the purpose of becoming a passenger, and that he was willing to pay and would have paid but for the failure of the conductor to come where he was, and the crowded condition of the car which compelled him to stand upon the foot-board on the outside. We think he was a passenger.

3. The next point is that the learned judge of the court below did not define to the jury the terms "diligence," "negligence," "extraordinary care," etc., which were frequently used throughout the instruction. The answer to which is that although the appellant requested a number of instructions, all of which were given with the exception of one, either as requested or in a modified form, none of them called the attention of the court to the alleged omission or asked a definition of the terms used, and error cannot now be predicated on its omission.

4. Running through the charge as given, the court instructed the jury, in substance, that the appellant, as a common carrier of passengers, was liable to the respondent if the injury done to him could have been avoided by extraordinary care and vigilance on the part of the appellant, its agents and employés. Substantially, the instructions on this point were the same as those usually given in cases of injuries upon steam railroads. It has long been the rule

that when carriers undertake to convey persons by the powerful and dangerous agency of steam, public policy and safety require that they be held to the greatest possible care and diligence. *Philadelphia, etc., R. R. Co. v. Derby*, 14 How. 486; *Steamboat New World v. King*, 16 How. 469; *Pennsylvania Co. v. Roy*, 102 U. S. 451. But the appellant maintains that it should not be placed within the category of steam railroad cases, but should be held only to the lesser degree of care required of horse railroad companies. It was said in *Unger v. Forty-Second St., etc., R. R. Co.*, 51 N. Y. 497, that the same degree of care and skill was not required of carriers of passengers by stage coaches as was required of steam railroad companies, and that for the same reason it was not required of carriers of passengers upon street cars drawn by horses. Probably the correct rule in all such cases, whether the method of transportation be steam, electricity, compressed air, horses, or any other power, is as well stated in that case as anywhere, viz., that the degree of care required in any case must have reference to the subject matter, and must be such as a man of ordinary prudence and capacity may be expected to exercise in the same circumstances. In some cases this rule will require the highest degree of care, and in others much less.

There were four questions of fact involved in this case: (1) Did the appellant deposit the plank on the track in the position where it struck the respondent? (2) Did it inspect its track with reasonable frequency? (3) Did the motorman keep a sufficient lookout? (4) Was the brake deficient? In any one of these matters it was certainly not improper to say to the jury that the railroad company should exercise at least a very high degree of care since it appears that it was at this time frequently carrying over this track such numbers of passengers in open cars that they could not be supplied with seats; that the track was

straight for a long distance, and on a down grade; that it was the custom of the motormen to allow the car to run down the grade by gravity, leaving it dependent for stoppage almost entirely upon the brake, and that it was not considered by the company unreasonable for the car to run along the place in question at a rate of from fifteen to twenty miles an hour. The lowest estimate of the rate of speed of this car made by any witness was that of the motorman, who put it about sixteen miles an hour. Other witnesses think it was running at twenty-five miles an hour. If there are any circumstances where a carrier of this kind should be required to keep its track clear, its motormen's eyes open, and its brakes in perfect order, they are certainly presented in this case.

Since the decisions which fixed the liabilities of horse railroads were made, and within very recent years, electricity as a motive power for propelling street cars has come into general use, and but few cases are to be found in the books relating to them. A horse car is very little different from a stage coach, or any other wheeled vehicle drawn by horses, but an electric car differs from a horse car in many respects as greatly as does a steam car. In the course of judicial treatment the operators of such vehicles must expect to be held to a greater degree of responsibility than ever attended the use of the now almost obsolete horse car.

5. The fourth and fifth paragraphs of the complaint allege as follows:

"4. That the defendant so negligently and unskillfully conducted itself on said day in the management of its roadbed and track between its termini above mentioned that through the negligence and fault of the defendant and its servants a large heavy plank was placed upon its roadbed, by defendant and its servants, so as to project over and on to said track at a height of between two and six feet above

said track, and so projecting said plank was allowed to remain with the knowledge and consent of the defendant.

"5. That defendant so negligently and unskillfully conducted itself in the management of said car upon which plaintiff was a passenger that through the negligence of defendant and its servants in guiding said car, and in not keeping the said roadbed and track in proper condition, the said car while proceeding from Ballard to Seattle ran plaintiff, while a passenger upon said car, against said plank, by which plaintiff was much injured, being cut and bruised upon his right leg and knee."

Under this portion of the complaint error is assigned because the court permitted the respondent to draw out of the motorman upon his cross examination that the brake rod was too long, so that when the brake chain was wound around the brake staff to its full length the rod did not take up all the slack, and therefore the brake did not press firmly against the wheels.   A plaintiff is required to state his case in his complaint, but not the evidence to sustain it. The allegation that the defendant so negligently and unskillfully conducted itself in the management of its car that through the negligence of defendant and its servants, in guiding the car, respondent was injured, we think was broad enough to cover the admission of the motorman's statement even in plaintiff's opening.   A passenger who is injured in such an accident has but slight means of knowing just what the immediate cause of his injury is, and could only be held to a general statement of it.   The care of a brake rod in this case might be said to be a part of the management of the car, for which complaint was specifically made.   It was hidden away from sight, where the respondent could not see it, or have knowledge of its construction, and if it was a fact that it was defective to such an extent that it caused or contributed to cause respondent's injury by its failure to stop the car before the plank was reached, he had a right to present that fact to the jury.

In *Northern Pacific R. R. Co. v. O'Brien*, 1 Wash. 599 (21 Pac. Rep. 32), the allegation of the complaint was that "while plaintiff (who was an employé) was being so conveyed to his work by the defendant . . . a collision occurred on the said railroad, between said work train, on which plaintiff was being so conveyed, and a locomotive and tender coming from an opposite direction, under authority and direction of defendant, and meeting the said work train, which collision was caused by the gross negligence and carelessness of defendant and its servants."

The court below admitted evidence tending to show defects in the engine, and that was one of the principal points of controversy in the case.    The territorial supreme court, by Burke, Chief Justice, said:

"The allegations in the complaint were broad enough to cover such testimony; and, even if they were not, this would furnish no ground of exception, in view of § 105 of our code."

6. Appellant asked the court to charge:

"The defendant is not chargeable with negligence by reason of the position of the plank by which the plaintiff was struck, unless the jury find either that the defendant caused or permitted the plank to be placed in a dangerous position near the track, or failed to inspect the track and its vicinity diligently and frequently prior to the accident."

The request was granted with this addition:

"Or that the motorman or the person who was running the car upon which plaintiff was riding at the time of the injury complained of could not by the exercise of a high degree of care have seen the plank which struck plaintiff in time to have prevented the running of said car into or against said plank."

Complaint is made because the addition made by the court has a tendency to divert the minds of the jury from the point of the instruction asked, which was to the appellant's responsibility as to the plank, irrespective of its re-

sponsibility as to other elements of the case.  It is true that the appellant had the right to have the jury clearly made to understand that it was not liable for an obstruction placed upon or dangerously near its track in a public street by third persons unless it was negligent in the inspection of its road, but we are unable to see that the addition made by the court deprived the jury of the information intended to be conveyed.  In a previous request which was also given by the court at the instance of appellant, the jury were told that "the plaintiff must show by a preponderance of the evidence that the defendant's servants were negligent in guiding the car on which the plaintiff rode, or in keeping the road bed and track in proper and safe condition, or in placing or leaving a heavy plank near its track so as to project over the road bed far enough to strike and hurt the plaintiff." Having requested the latter charge, we do not think the appellant can complain of the other.

7. The ordinances granting franchises to build the appellant's railway were put in evidence.  These ordinances limited the speed of cars to ten miles an hour, and upon their effect the appellant asked this charge:

"The question whether the speed at which the car in question was running at the time of the accident was under all the circumstances such as to amount to negligence on the part of the defendant is to be determined by the jury without any reference to the limit of speed of cars imposed by the franchise under which the part of the road where the accident occurred was operated at the time of the accident."

Upon the refusal to give this charge, error is alleged because, as it is said, outside of municipal lines the highest possible speed is allowed to all carriers by railroad, and such speed when track, car, etc., are in good condition is never negligence as to a passenger.  No authority is cited for this proposition, and we doubt the correctness of it.  If

an injury occurs to a passenger from any cause where but for the fact that an extraordinary or reckless rate of speed is being maintained no injury would have occurred, the liability of the carrier can be no less in such a case than where injury occurs through any other act of negligence.   In *Meek v. Pennsylvania Co.*, 38 Ohio St. 632, it was said:

"This ordinance was admissible as reflecting upon the question of the care exercised by the deceased in view of the fact that the defendant was guilty of an act forbidden by an ordinance, which he had no reason to anticipate. Again, proof that defendant was violating this ordinance, was in its nature evidence tending to show defendant's liability, where the injury resulted from not observing it."

8. Respondent could find no other place to locate himself on the car but the footboard running along the side of the car, because the car, which was an open one with seats running crosswise, was full, as was all the standing room on the platforms and on both the footboards.   No objection was made by any agent of the appellant to his taking that position and it was shown to be a common thing for passengers on appellant's cars to ride in that way.   There might be some injuries to which such action on the part of a passenger would be justly said to contribute, but they are not of the class of injuries here in question.

9. The respondent resorted to some unnecessary evidence for the purpose, as it was asserted, of showing that the appellant was a common carrier, and in the exercise of its franchises from the city of Seattle, and the board of county commissioners.   The complaint only put in issue the question whether or not the appellant or the construction company was operating the road.   A number of objections addressed to the documentary evidence in this connection may, therefore, be passed over.   But it is said that a certain mortgage made by the appellant to secure bonds to the amount of three hundred thousand dollars was used in the argument to the jury by counsel for the respondent to

show that appellant was a rich corporation, and could, therefore, afford to spend enough to prevent accidents or pay well for those which it permitted to happen. If any such argument was used it is not necessary to say that it was most reprehensible, but we find nothing of the kind in the record, and therefore cannot pass upon it. Under the view that the respondent appears to have taken of the necessities of his case, it would seem that his introduction of the mortgage was to show a declaration on the part of the appellant that it had accepted, and was in possession of the franchises granted by the ordinances, and that the franchises granted by the city of Seattle to certain private individuals had been conveyed to it, which was a legitimate purpose, although not material under the pleadings.

10. Two physicians, who were witnesses for the respondent, testified to the existence of a certain lump or enlargement on the inside of the respondent's knee. For appellant two physicians also testified that there was no lump there. On rebuttal, respondent produced a third witness, who, over objection, testified to the lump. Thompson on Trials, § 346, is as follows:

"The admission or exclusion of evidence not strictly in rebuttal is a matter resting in the *discretion* of the trial court, the exercise of which discretion is not subject to review except in cases of gross abuse."

The production of merely cumulative evidence can certainly not be held to be an abuse of this discretion.

These were all the material errors alleged to have occurred at the trial. The jury brought in a verdict for ten thousand dollars, six thousand for damages up to the time of the trial, and four thousand for permanent injury. The court, on motion for new trial, reduced the judgment to seven thousand dollars, and it is contended that even this sum is excessive.

The respondent was a carpenter and contractor, thirty-

six years of age, and a first-class workman; for several
years his earnings had averaged a thousand dollars a year.
He was struck by the end of a plank about twenty feet
long, twelve inches wide and three inches thick, on the in-
side of the right knee.    For several months he was obliged
to have the attendance of physicians and nurses, expending
therefor in the neighborhood of three hundred dollars; and
up to the time of the trial, about eleven months after the
injury, he had been unable to work at his trade.    He had
suffered great, and at times almost unbearable pain, and
had had to undergo several times the operation of "break-
ing down," which consisted in forcing the leg from a
crooked into a straight position.    At the time of the trial
he could walk, but with a slight limp, and by the use of a
cane.    Externally the injury appeared to have been prac-
tically cured.    His leg from near the hip down was some
less in diameter than the left one.    The doctors disagreed
entirely as to the existence of the lump above spoken of,
and they also disagreed as to the future of the lump.    Re-
spondent's physicians maintain that it was a question
whether the knee would ever recover its former perfect
condition, and testified that it was possible that future com-
plications might arise which would require the amputation
of the leg.    Appellant's physicians could see no reason
why the leg would not by reasonable exercise become as
good as ever, excepting that the power of flexion and ex-
tension would be slightly reduced.    Respondent himself
claimed that he still had some pain in his knee, and that he
could not resume his work as a carpenter because his knee
was weak, and he could not for that reason do certain kinds
of work which required a perfect limb.

A court of last resort must hesitate before it interferes
with a verdict of this kind.    Yet upon the theory of com-
pensation we cannot see any reasonable grounds for sup-
porting so large a judgment in this case.    The actual

injury which is subject to computation was one thousand dollars for loss of time, and three hundred dollars for medical services and attendance, leaving five thousand seven hundred dollars for suffering and permanent injury.    We doubt whether any case can be found of a similar character where so large a judgment has been permitted to stand. The case of *Clapp v. Hudson River R. R. Co.*, 19 Barb. 461, was a well considered case of a similar character. The jury gave a verdict of six thousand dollars, and the court on appeal reduced it to four.    We think that, in consideration on the one side of the possibility of further trouble with respondent's knee, and on the other side that while he may not be able to do carpenter work as before, he is by no means incapacitated from performing labor in many other vocations of life, five thousand dollars would amply compensate him for his actual injury.    If within thirty days from the filing of this opinion he shall signify his acceptance of that amount, the judgment so modified will be permitted to stand, otherwise a new trial will be granted.

ANDERS, C. J., and HOYT, J., concur.

SCOTT, J.—I think the judgment should have been affirmed.

DUNBAR, J. (*dissenting*).—I dissent from the conclusion reached by the majority that the judgment in this case should be reduced to $5,000, or reduced at all.    There is nothing in the record to indicate, much less to prove, that the verdict of the jury, which was for $10,000, was rendered under the influence of passion or prejudice.    It is getting to be too common a practice, in my opinion, for courts to practically ignore the province of the jury in the assessment of damages in this kind of cases, and to act on the presumption that the damages were excessive, instead of on the proper presumption that the verdict of the jury was

right.    If the practice goes much farther in this direction the services of the jury might as well be dispensed with altogether, and the question of damages be submitted originally to the appellate court.    There should be no distinction in the weight to be given to the verdict of the jury in the assessment of damages for personal injuries and their findings of fact on any other question.    And yet while appellate courts universally hold that they will not disturb the findings of fact of a jury, except in case of a gross abuse of discretion, even where under the testimony the court would have come to a different conclusion, for the oft expressed and best of reasons that those questions were submitted expressly for the consideration of the jury, who come from the different walks of life, who bring to bear a diversity of experience in the affairs of men concerning facts over which men litigate, and especially because they have the advantage of meeting the witnesses face to face, and of judging from their manner of testifying, their appearance on the witness stand, willingness or unwillingness, their hesitancy or their promptness, and their many other little movements and circumstances which are convincing to the one who sees them and which cannot be reduced to paper, how much credit ought to be given to their testimony, they will in the most cavalier manner set aside a verdict which embodies a finding of fact with reference to damages, while in truth courts ought to have more hesitancy in setting this character of verdict aside than any other.    For instance, in this case, the appearance of the plaintiff, who claims to be still suffering from his injury, would greatly aid the jury in determining the truth or falsity of his statements.    This appearance, together with other advantages mentioned above, this court is deprived of.    I am not in sympathy with the universal invocation of those twin bugbears, "passion and prejudice," to set aside the deliberate verdict of jurors in damage cases.    When

the record shows that passion or prejudice *did* control the jury, of course the duty of the court is plain; but there must be something more than the simple assertion of these influences to raise the presumption; for I do not believe, as a rule, that jurors are controlled by such unworthy influences.    And in this particular case there is nothing to justify such conclusion.    The jury heard all the testimony in the case; they evidently gave credence, as they had a right to under the law, to the statements of the plaintiff with regard to his injuries; and if his statements were true the amount of damages which they assessed was not excessive.    And even if this court would have come to a different conclusion, that alone, under all authority and law, would not justify it in disturbing the verdict.    Add to this the fact that the verdict of the jury had been reduced to $7,000 by the judge who tried the case, so that the judgment comes here approved by the presumably dispassionate judgment of the trial judge, and it seems plain to my mind that without some prejudicial error was committed in the trial of the cause, which is not claimed by the majority, that the judgment should be affirmed.