NORTHERN PAC. RY. CO. et al. v. MENTZER.

(Circuit Court of Appeals, Ninth Circuit. May 4, 1914.)

No. 2298.

1. RAILROADS (§ 479*) —FIRES—ACTION AGAINST DIFFERENT RAILROAD COMPANIES—PLEADING SINGLE CAUSE OF ACTION.

In an action against two railroad companies for setting fire to plaintiff's planing mill, a complaint, alleging that while the trains of defendants were running on and over the railway of the N. P. Ry. Co., and passing the property of plaintiff, one of the locomotives was so negligently constructed, and so carelessly operated· by defendants' servants and agents that sparks were emitted therefrom, falling on and about the

building in which the greater part of plaintiff's property was located and set fire thereto, which fire spread on and over plaintiff's property, burning the same. *Held*, that the complaint charged but one cause of action, to wit, the burning of plaintiff's property by sparks negligently emitted from an engine belonging to one of the defendants, running over the tracks of the N. P. Ry. Co., and hence the fact that the engine that actually set the fire belonged to the O. W. Co., which was operated over the tracks of the N. P. Ry. Co., under a trackage agreement or lease, did not relieve the N. P. Ry. Co. from liability.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1706–1708; Dec. Dig. § 479.*]

2. RAILROADS (§ 259*) — OPERATION — TRACKAGE AGREEMENT — LIABILITY OF LESSOR COMPANY.

Where a railroad company permits another company to run trains over its tracks under a trackage agreement or lease, the lessor company is legally responsible to third persons for acts of negligence on the part of the lessee company, its agents, or servants, in running trains over such tracks.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 802–816; Dec. Dig. § 259.*]

3. ACTION (§ 38*)—TORTS—JOINT OR SEVERAL TORT.

Where an action is brought against two defendants for a joint tort, one of the defendants cannot insist that the action shall be treated as several.

[Ed. Note.—For other cases, see Action, Cent. Dig. §§ 549, 565; Dec. Dig. § 38.*]

4. ACTION (§ 38*)—JOINT RECOVERY—SEPARATE DEFENSE.

While a separate defense may defeat a joint recovery, it cannot deprive plaintiff of his right to prosecute his suit to final decision, as a joint cause of action against two or more defendants; the cause of action being regarded as the subject of the controversy, and for all purposes of the suit, whatever plaintiff declares it to be in his pleadings.

[Ed. Note.—For other cases, see Action, Cent. Dig. §§ 549, 565; Dec. Dig. § 38.*]

5. RAILROADS (§ 481*)—FIRES—OTHER FIRES.

In a suit against two railroad companies for burning plaintiff's property by a fire alleged to have been set out by defendants' locomotives running over the tracks of one of them, evidence concerning other fires, alleged to have been set by defendants' locomotives within 30 days prior to the fire in question, was properly admitted as tending to show a negligent habit of the officers or agents of the railroad companies, regardless of the fact that the locomotives which were claimed to have set such other fires were not identified as those claimed to have set the fire in question, and though it also appeared that a third railroad company operated trains over such tracks, and that a locomotive belonging to it might have caused the other fires.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1717–1729; Dec. Dig. § 481.*]

6. RAILROADS (§ 484*)—FIRES—QUESTION FOR JURY—INSTRUCTIONS.

Where, in an action for burning plaintiff's property by fire alleged to have been set out by the engines of defendant railroad companies, one of plaintiff's witnesses testified that he first saw the fire about 1:30 a. m., while the chief of the fire department testified that an alarm was turned in about 3:50 a. m., and defendants contended that if the fire did not break out and was not discovered until 3:30 a. m., it could not have been caused by sparks from either of the locomotives from which sparks had been seen to issue, but there was other testimony that a spark falling in a mill such as that in question during the dry season might smolder for

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

hours before fire would break forth, whether the fire was caused by sparks from the defendants' engines was for the jury, and the court properly refused to charge that, if the fire did not start until shortly before 3:30 a. m., the verdict should be for defendants.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1740–1746; Dec. Dig. § 484.*]

7. TRIAL (§ 252*)—INSTRUCTIONS—APPLICABILITY TO EVIDENCE.

Where, in an action against certain railroads for the destruction of plaintiff's property by fire, there was no evidence that a certain engine of defendant N. P. Ry. Co., which passed at 3:35 a. m. emitted sparks while passing the property, the court did not err in refusing to charge that, while the jury could not find any negligence because of the operation of such engine, still the fact that it passed the building at the time was a circumstance to be considered by the jury in determining whether some other agency than that of the O. W. Ry. Co.'s freight, or the N. P. Ry. Co.'s passenger train caused the fire, etc.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 505, 596–612; Dec. Dig. § 252.*]

8. APPEAL AND ERROR (§ 1068*)—REVIEW—HARMLESS ERROR—REFUSAL OF INSTRUCTIONS.

Where, in an action for burning plaintiff's property by fire alleged to have been set out by a locomotive belonging to one of defendants, the jury expressly found in answer to a special interrogatory that the engine attached to N. P. Ry. freight No. 680. did not set the fire, defendants were not prejudiced by the refusal of an instruction that the jury were entitled to consider the fact that such train passed the building about 3:35 a. m. on the day of the fire as bearing on the question whether some other agency than that of defendant set the fire.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4225–4228, 4230; Dec. Dig. § 1068.*]

9. RAILROADS (§ 484*)—FIRES—NEGLIGENCE—QUESTION FOR JURY.

Where, in an action against certain railroads for burning plaintiff's property by fire started from a locomotive, there was proof that defendants' trains passed the building, emitting sparks the size of a dime, and a locomotive inspector testified that the spark arrester of the locomotive in question was of the best known type and in perfect order on the morning of the day of the fire, that a spark arrester in proper condition would restrain all sparks larger than the head of a small match, and that if larger sparks went through to any height or distance, it would show that the arrester was in bad condition, whether defendants were negligent, was for the jury.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1740–1746; Dec. Dig. § 484.*

Presumption of negligence from fires, see note to McCullen v. Chicago & N. W. Ry. Co., 41 C. C. A. 370.]

10. RAILROADS (§ 453*)—FIRES—LIABILITY.

A railroad company is not an insurer of the property along its line, and cannot be held liable for the destruction of property by fire from sparks from its engines, unless they are improperly constructed or negligently operated.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1657–1660, 1667; Dec. Dig. § 453.*]

11. RAILROADS (§ 482*)—FIRES—SPARKS.

In order for plaintiff to recover against a railroad company for the destruction of his property by a fire set by sparks from a locomotive, he must prove that the property was destroyed by fire set out from sparks from one of defendants' engines; that the engine was either defectively constructed so that it would emit sparks of such a character that the

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

same could be provided against by the exercise of ordinary care, or that the engine was so negligently operated that it would emit sparks of a dangerous character that could have been prevented by the exercise of such care.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1730–1732, 1734–1736; Dec. Dig. § 482.*]

In Error to the District Court of the United States for the Southern Division of the Western District of Washington; Edward E. Cushman, Judge.

Action by Cyrus A. Mentzer against the Northern Pacific Railway Company and another. Judgment for plaintiff, and defendants bring error. Affirmed.

Cyrus A. Mentzer, the plaintiff in the court below, is a citizen of the state of Washington. The Northern Pacific Railway Company is a corporation organized and existing under and by virtue of the laws of the state of Wisconsin. The Oregon-Washington Railroad & Navigation Company is a corporation organized and existing under and by virtue of the laws of the state of Oregon. It is alleged in the amended complaint filed by the plaintiff that on or about the 15th day of July, 1911, he was the owner of a certain planing mill, including machinery and a large quantity of lumber, located at South Tacoma, in the state of Washington, and adjacent to the right of way of the Northern Pacific Railway Company, the planing mill and machinery and lumber being of the value of $3,330; that on or about that date, and for some time prior thereto, the defendant Oregon-Washington Railroad & Navigation Company was operating trains over the railroad of the defendant Northern Pacific Railway Company, and running by the property of the plaintiff; that on that date, while the trains of the defendants were running upon and over the railroad of the Northern Pacific Railway Company, and passing the property of the plaintiff, one of the locomotives of the defendants was so carelessly and negligently constructed, and so carelessly and negligently operated by the servants and agents of the defendants, that sparks were emitted therefrom, which, falling upon and about the building in which the greater portion of the property of the plaintiff was located, set fire thereto, which fire so set spread upon and over the property of the plaintiff, burning and consuming the same; that the loss, injury, and damage resulting to the plaintiff by reason of the fire was caused by the negligent construction of the locomotives of the defendants, and the carelessness and negligence of the servants and agents of the defendants in operating the same, and in starting the fire and permitting the same to burn the property of the plaintiff. The defendants filed separate answers to the amended complaint, denying all of the material allegations thereof. The case went to trial on the amended complaint and answer. At the close of the testimony each of the defendants moved the court to direct the jury to return a verdict in its favor upon the ground that the evidence was insufficient to justify a verdict against it; that there was not sufficient testimony showing that it was guilty of any negligence in the operation of its engines, or that its engines were negligently constructed or equipped; that there was no sufficient evidence to show that any fire was started by reason of any sparks emitted by its engine; and that the plaintiff, having sued upon a joint cause of action alleged against both defendants, and having proved, if he had proved anything, a separate act of each defendant, was not entitled to maintain the action. The jury returned a verdict in favor of the plaintiff in the sum of $3,120. To the form of verdict submitted to the jury there was annexed the following interrogatory: "Q. If your verdict is in favor of the plaintiff, state whether the fire was started by sparks from the engine drawing Northern Pacific passenger train No. 301, or the engines of Northern Pacific freight train No. 680, or the engine of the Oregon-Washington Railroad & Navigation freight train No. 691." To this interrogatory the jury in its verdict returned the following answer: "A. Fire was

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

started by sparks from the engine of the Oregon-Washington Railroad & Navigation freight train No. 691." A judgment was entered against the defendants and in favor of the plaintiff in the sum of $3,120, from which judgment, and from the order of the court below denying the motion of the defendant the Oregon-Washington Railroad & Navigation Company for a new trial, the defendants sued out a writ of error from this court.

J. W. Quick, of Tacoma, Wash., W. H. Bogle, Carroll B. Graves, F. T. Merritt, and Lawrence Bogle, all of Seattle, Wash., and P. C. Sullivan and Walter Christian, both of Tacoma, Wash., for plaintiffs in error.

E. D. Hodge and Charles Bedford, both of Tacoma, Wash., for defendant in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

MORROW, Circuit Judge (after stating the facts as above). [1] 1. The plaintiffs in error were defendants in the court below. It is contended by them that the plaintiff, having sued the defendants jointly upon one cause of action, cannot recover upon proof of distinct separate torts, one based upon the operation or construction of a particular engine of the Northern Pacific Railway Company, and one based upon a different claim of negligence in the operation or construction of an engine of the Oregon-Washington Railroad & Navigation Company. Admitting the rule to be as stated, it has no application in this case. No recovery was sought, nor has any recovery been had upon proof of distinct separate torts. The allegations of the complaint are that:

"While the trains of the defendants were running upon and over said railway of the said Northern Pacific Railway Company, and passing the property of the plaintiff, above described, one of the locomotives of the defendants was so carelessly and negligently constructed, and so carelessly and negligently operated by the servants and agents of the defendants, that sparks were emitted therefrom, which, falling upon and about the building, in which the greater portion of the property of the plaintiff was located, set fire to said building and property, which fire so set spread upon and over the property of the plaintiff burning and consuming the same."

This allegation charges but a single cause of action, namely, the setting fire to the plaintiff's property by sparks negligently emitted from an engine belonging to one of the defendants, not from engines belonging to both of the defendants, and the running of that engine over the tracks of the Northern Pacific Railway Company. It was stipulated between the parties that the Oregon-Washington Railroad & Navigation Company was running its trains over the trackage of the Northern Pacific Railway Company, between Tacoma and Portland, under a lease or trackage agreement with the Northern Pacific Railway Company; the property being owned by the Northern Pacific Railway Company. It remained, then, to ascertain whether the fire which destroyed plaintiff's property was caused by sparks negligently emitted from an engine running on the tracks of the Northern Pacific Railway Company, and, if so, to identify the engine. There was proof identifying the engine as belonging to the Oregon-Washington Railroad & Navigation Company, and the stipulation as to the ownership of the tracks on which it was running constituted proof of a single

cause of action. Upon this question the court instructed the jury as follows:

"It will first be your duty to determine in this case, and you will not go outside the evidence, and you will not speculate or guess concerning any of the issues in this case, but if the evidence has shown, it will be first your duty to determine whether or not the mill was burned by sparks emitted by one of these engines, that is, one of the engines of one of the defendant companies. If you find that there is a fair preponderance of evidence showing that it was set on fire and burned down by the sparks emitted from the engines of one of these companies, it will then be your duty to pass on and determine whether either of the defendants have been negligent in either of the particulars of which complaint is made by the plaintiff. If you find that one or both of the defendants were negligent in one or both of the particulars of which complaint is made in the complaint, and that is shown by a fair preponderance of the evidence, it will then be your duty to determine whether that negligence was the proximate cause of the setting fire to the mill. * * *

"If the Oregon-Washington Railroad & Navigation Company was negligent in the particular of which the plaintiff complained, and that negligence was the proximate cause of the fire, the Oregon-Washington Railroad & Navigation Company would not only be liable, but the Northern Pacific would be liable as well, because the Northern Pacific is allowing them to use their tracks in a negligent manner, but if the fire was negligently caused, as complained of, by one of the Northern Pacific engines, the Oregon-Washington Railroad & Navigation Company would not be liable, because the extent of its liability is confined to furnishing proper engines and properly equipped and operated in an ordinarily careful and skillful manner, and would not in any way be responsible for the conduct of the Northern Pacific Railway Company."

[2] The relationship of the defendants growing out of this trackage agreement or lease was such that the Northern Pacific Railway Company was legally responsible for acts of negligence on the part of the Oregon-Washington Railroad & Navigation Company, or its agents or servants, running trains over the tracks of the former.

This is now the established rule. The case of C., B. & Q. Ry. Co. v. Willard, 220 U. S. 413, 31 Sup. Ct. 460, 55 L. Ed. 521, was a joint action against two railroad companies (one thereof being the lessee of the other), to recover damages alleged to have been caused by the negligence of the defendants by their agents and servants, whereby the intestate of the plaintiff was killed. Mr. Justice Harlan, delivering the opinion of the Supreme Court of the United States, said:

"Whatever liability was incurred on account of the death of the plaintiff's intestate could, at the plaintiff's election, be asserted against both companies in one joint action, or, at his election, against either of them in a separate action."

In Pennsylvania Co. v. Ellett, 132 Ill. 654, 24 N. E. 559, the Supreme Court of Illinois said:

"The law has become settled in this state, by an unbroken line of decisions, that the grant of a franchise, giving the right to build, own, and operate a railway, carries with it the duty to so use the property and to manage and control the railroad as to do no unnecessary damage to the person or property of others; and, where injury results from the negligence or unlawful operation of the railroad, whether by the corporation to which the franchise is granted, or by another corporation, or by individuals whom the owner authorizes or permits to use its tracks, the company owning the railroad and franchise will be liable. * * *

"While the company guilty of the negligence * * * will be liable for the damages resulting therefrom, the owner of the railroad to whom is grant-

ed the control and management of it will also be liable. The public may look for indemnity for injury resulting from the wrongful or unlawful operation of the road to that corporation to which they have granted the franchise, and thus delegated a portion of the public service; and for this purpose the company whom it permits to use its tracks, and its servants and employés will be regarded as the servants and agents of the owner's company."

In Lakin v. Railroad Co., 13 Or. 436, 11 Pac. 68, 57 Am. Rep. 25, the Supreme Court of Oregon said:

"The defendant * * * cannot escape liability for injuries to passengers caused by the negligence of another which it permits or allows to use its road for the purposes of traffic. In such case, as regards the public, those who operate the road must be regarded as the agents of the corporation. This doctrine is in accordance with sound public policy; for it would certainly be against the public interest to allow corporations, invested by the state with important franchises and privileges, and incorporated to discharge a public duty as well as to subserve a private benefit, to shirk its responsibilities, or shift its duties and liabilities to other, perhaps irresponsible, parties. Except as authorized by statute, it cannot relieve itself from responsibility for the exercise of its corporate powers and franchises."

The Supreme Court of the state of Washington has been called upon to apply this rule in cases arising before that tribunal. In Cogswell v. West St., etc., Electric Ry. Co., 5 Wash. 46, 31 Pac. 411, that court said:

"It is a well-established principle of the law governing common carriers which obtain certain rights or franchises from the public by either special or general legislation on the part of the state or municipal corporations, and upon whom in return therefore are cast the burden of certain duties, that they cannot, by means of any lease or other contract for the operation of their means of transportation or the management and control of their tracks and right of way, relieve themselves from liability for violations of contracts or the public law, or for torts committed by their lessees or the parties with whom they specially contract."

See, also, Herrman v. Great Northern Ry. Co., 27 Wash. 472, 68 Pac. 82, 57 L. R. A. 390.

In some of the cases in which this rule has been enforced, the lessor was out of possession of the railroad, and the lessee, for whose negligent acts the lessor was held responsible, was in entire possession and control of the railroad, and was the sole operator thereof. If the rule has been held to apply in such cases, how much stronger are the reasons for applying it in cases where, as in the one now under consideration, both the lessor and the lessee companies were jointly engaged in operating trains daily over the same right of way.

[3, 4] There is a further rule applicable to this case under which the cause of action as alleged and proven must be sustained, and that is the rule that in an action of tort the defendant has no right to say that an action shall be several which the plaintiff seeks to make joint. A separate defense may defeat a joint recovery, but it cannot deprive the plaintiff of his right to prosecute his suit to final decision in his own way. The cause of action is the subject-matter of the controversy, and that is, for all purposes of the suit, whatever the plaintiff declares it to be in his pleadings. Louisville, etc., Railroad Co. v. Ide, 114 U. S. 52, 56, 5 Sup. Ct. 735, 29 L. Ed. 63; Pirie v. Tvedt, 115 U. S. 41, 43, 5 Sup. Ct. 1034, 1161, 29 L. Ed. 331; Sloane v. Anderson, 117 U. S. 275, 6 Sup. Ct. 730, 29 L. Ed. 899; Little v. Giles, 118 U. S. 596.

600, 601, 7 Sup. Ct. 32, 30 L. Ed. 269; Louisville, etc., Railroad Co. v. Wangelin, 132 U. S. 599, 10 Sup. Ct. 203, 33 L. Ed. 474; Torrence v. Shedd, 144 U. S. 527, 530, 12 Sup. Ct. 726, 36 L. Ed. 528; Connell v. Smiley, 156 U. S. 335, 340, 15 Sup. Ct. 353, 39 L. Ed. 443; C., B. & Q. Ry. Co. v. Willard, 220 U. S. 413, 425, 31 Sup. Ct. 460, 55 L. Ed. 521.

[5] 2. It is further contended that the court below erred in permitting the plaintiff, over the objection of the defendants, to introduce evidence concerning other fires alleged to have been set by locomotives of the defendants, within 30 days prior to the burning of the plaintiff's mill; and, further, that the court erred in refusing to give to the jury the following instruction requested by the defendants on that subject:

"There was some evidence introduced by plaintiff as to fires originating in the vicinity by sparks from engines within 30 days prior to the date when plaintiff's property was burned. The court instructs you that this evidence is too indefinite and uncertain to constitute any proof against the defendants, or either of them. You will therefore disregard this testimony in your consideration of the case."

The testimony with respect to previous fires, to which the defendants objected, was given by four witnesses on behalf of the plaintiff, each of whom was asked, in substance, whether or not he had ever seen any other fires in the immediate neighborhood of the mill set by sparks from the engines of the defendants Northern Pacific Railway Company, or Oregon-Washington Railroad & Navigation Company, at any time within 30 days prior to the burning of the plaintiff's mill. The answers of the witnesses to this question were to the effect that they had seen several such fires along the right of way of the Northern Pacific Railway Company, but that they did not know whether the same were set by sparks from the locomotives of the Northern Pacific Railway Company, or the Oregon-Washington Railroad & Navigation Company, or the Great Northern Railway Company, which last-named company it appeared from the testimony was also operating trains over the tracks and right of way of the Northern Pacific Railway Company, and past the mill of the plaintiff.

The specific objection to this testimony is that the admitted and stipulated facts showed that the plaintiff claimed that a particular engine of the Oregon-Washington Railroad & Navigation Company, or a particular engine of the Northern Pacific Railway Company, had caused the fire which destroyed the plaintiff's property; that the testimony should have been limited, if admitted at all, to fires started by those specific engines; and that the testimony of the plaintiff's witnesses with respect to seeing other fires set by locomotives of the defendants, within 30 days prior to the date of the fire which destroyed the plaintiff's mill, did not disclose the locomotive or locomotives of the respective defendants, or of the Great Northern Railway Company, by which such fires had been caused.

But we find no such stipulation or admission in the record. The only testimony in the case concerning the escape of sparks from locomotives of either of the defendants passing the plaintiff's mill on the morning of the destruction thereof related to two certain locomotives, both of which were proceeding in a southerly direction; one thereof

214 F.—2

being attached to a freight train, and the other being attached to a passenger train. It appeared from the testimony that about 10 or 15 minutes elapsed between the passing of the two trains. There is in the record a stipulation between the parties, to the effect that a freight train of the Oregon-Washington Railroad & Navigation Company, numbered 691, and a passenger train of the Northern Pacific Railway Company, numbered 301, left the station of South Tacoma, bound for Portland, going south, on the morning of the fire in question. It further appeared from the block sheet of the defendants introduced in evidence, showing the arrival and departure of trains at South Tacoma on the morning that the plaintiff's property was burned, that the freight train of the Oregon-Washington Railroad & Navigation Company (No. 691) left South Tacoma at 1:43 a. m., and that the passenger train of the Northern Pacific Railway Company (No. 301) left South Tacoma at 1:57 a. m. The mill of the plaintiff was located at a point about three blocks to the south of South Tacoma Station, and about 90 feet from the main tracks of the Northern Pacific Railway Company.

The contention of the defendants, therefore, amounts to this: That testimony as to other fires being started by locomotives of the defendants prior to the date of the destruction of the plaintiff's property was not admissible because it was not shown that they were caused by either of these two locomotives.

In Grand Trunk Ry. Co. v. Richardson, 91 U. S. 454, 23 L. Ed. 356, this precise question was before the Supreme Court of the United States. In that case Mr. Justice Strong said:

"The plaintiffs were allowed to prove, notwithstanding objection by the defendant, that, at various times during the same summer before the fire occurred some of the defendant's locomotives scattered fire when going past the mill and bridge, without showing that either of those which the plaintiffs claimed communicated the fire was among the number, and without showing that the locomotives were similar in their make, their state of repair, or management, to those claimed to have caused the fire complained of. The evidence was admitted after the defendant's case had closed. But, whether it was strictly rebutting or not, if it tended to prove the plaintiffs' case, its admission as rebutting was within the discretion of the court below, and not reviewable here. The question, therefore, is whether it tended in any degree to show that the burning of the bridge, and the consequent destruction of the plaintiffs' property, were caused by any of the defendant's locomotives. The question has often been considered by the courts in this country and in England; and such evidence has, we think, been generally held admissible, as tending to prove the possibility, and a consequent probability, that some locomotive caused the fire, and as tending to show a negligent habit of the officers and agents of the railroad company. Piggot v. R. R. Co., 3 M. G. & S. 229; Sheldon v. R. R. Co., 14 N. Y. 218 [67 Am. Dec. 155]; Field v. R. R. Co., 32 N. Y. 339; Webb v. R. R. Co., 49 N. Y. 420 [10 Am. Rep. 389]; Cleaveland v. R. R. Co., 42 Vt. 449; R. R. Co. v. Williams, 44 Ill. 176; Smith v. R. R. Co., 10 R. I. 22; Longabaugh v. R. R. Co., 9 Nev. 271. There are, it is true, some cases which seem to assert the opposite rule. It is, of course, indirect evidence, if it be evidence at all. In this case it was proved that engines run by the defendant had crossed the bridge not long before it took fire. The particular engines were not identified; but their crossing raised at least some probability, in the absence of proof of any other known cause, that they caused the fire; and it seems to us that, under the circumstances, this probability was strengthened by the fact that some engines of the same defendant, at other times during the same season, had scattered fire during their passage."

In Northern Pacific Ry. Co. v. Lewis, 51 Fed. 658, 2 C. C. A. 446, Judge Gilbert, referring to the case of Railroad Co. v. Richardson, supra, said:

"It is assigned as error that the court permitted evidence of other fires set at other points on the road and at other times, and by other engines, and instructed the jury to take into consideration the fires so set in determining the question of negligence. The complaint did not designate the particular engines which were claimed to have caused the fire. The testimony, however, tended to show that the fire originated from one of two certain locomotives, and that these and other locomotives had set other fires both before and after the injury complained of. This evidence was clearly admissible, under the authority of the decision in the case of Railroad Co. v. Richardson, 91 U. S. 454 [23 L. Ed. 356], as 'tending to prove the possibility, and consequent probability, that some locomotive caused the fire, and as tending to show a negligent habit of the officers and agents of the railroad company.'"

In Noland v. Great Northern Ry. Co., 31 Wash. 430, 71 Pac. 1098, the Supreme Court of Washington said:

"It is assigned, first, that the court erred in admitting testimony that other trains at other times set other fires, and it is insisted that the pleadings do not put in issue the sufficiency of the spark arrester with which such engine was equipped, or its condition of repair, and that it is therefore improper to admit evidence that the same train or engine threw sparks at other times. It will be noted, however, that no specific engine is designated in the complaint. If such were the case, it would not be proper to admit evidence of fires by other trains at other times for the purpose of charging the train specified with setting the fire, for the reason that it is frequently impossible in practice to trace the fire to a particular locomotive. The appellant insists that even then the testimony is inadmissible, in the absence of an issue in the pleadings as to the condition of the spark arrester or other machinery. But we think that, even in the absence of such an issue, the fact that engines of the defendant were in the habit of emitting sparks upon the right of way might be admitted as a circumstance in the case tending to show the origin of the fire, which was a disputed question in this case."

We are of opinion, therefore, that the testimony was clearly admissible, despite the fact that no particular locomotive or locomotives of either of the defendants was designated.

Nor do we think that the fact that it also appeared from the testimony of the witnesses, who testified concerning fires set by locomotives along the right of way of the Northern Pacific Railway Company prior to the destruction of the plaintiff's mill, that the Great Northern Railway Company also was operating trains over the Northern Pacific right of way, and that a locomotive or locomotives of that company might have caused such fires, rendered the testimony any the less admissible.

The instruction given to the jury with respect to the setting of other fires was as follows:

"In this case there was some evidence admitted concerning other fires set within 30 days previous to the fire in question. You will understand that unless there is some evidence to show that those fires were set by engines of the Oregon-Washington Railroad & Navigation Company, you will not consider that evidence as in any way affecting that company."

Whether the failure of the court below to give to the jury a similar instruction with respect to the defendant the Northern Pacific Railway Company was error is not a question for our consideration. The

jury answered the interrogatory submitted by the court that the fire which destroyed the plaintiff's mill "was started by sparks from the engine of the Oregon-Washington Railroad & Navigation Company's freight train No. 691." The jury could not have failed to understand that any testimony tending to show that fires were set by locomotives of either the Northern Pacific Railway Company or the Great Northern Railway Company was not evidence tending to show negligence on the part of the defendant, the Oregon-Washington Railroad & Navigation Company, in running its engine drawing freight train No. 691.

[6] 3. The action of the trial court in refusing to give the following instructions requested by the defendants is also assigned as error:

"You are instructed that if you find that the fire was not discovered by the witnesses until about 3:30 a. m., then your verdict must be for the defendants.

"If you believe from the evidence that the fire which destroyed plaintiff's property did not begin until shortly before 3:30 a. m. July 15, 1911, then your verdict must be for the defendants."

There was conflict in the testimony as to the exact time at which the fire broke out in the mill of the plaintiff. One of the witnesses testified that he had first seen fire at the mill at about 1:30 a. m. On the other hand, the chief of the fire department of Tacoma testified that the records of his department showed that the alarm notifying his department of the fire had been turned in at 3:50 a. m. The defendants contend that if the fire did not break out and was not discovered until 3:30 a. m., or for a period of an hour and a half after the last locomotive claimed to have caused the fire passed the mill, it could not have been caused by sparks from either of the locomotives from which sparks had been seen to issue. But there was testimony tending to show that a spark falling in a mill such as that of the plaintiff, during the dry season, with an accumulation of sawdust on the roof, might lie and smolder for hours before fire caused thereby would break forth. The question became, therefore, one for the jury, and the instructions requested by the defendants were properly refused. McCullen v. C. & N. W. Ry. Co., 101 Fed. 66, 41 C. C. A. 365, 49 L. R. A. 642; Asplund v. Great Northern Ry. Co., 63 Wash. 164, 114 Pac. 1043; Hawley v. Sumter Valley Ry. Co., 49 Or. 509, 90 Pac. 1106, 12 L. R. A. (N. S.) 526.

4. It is further contended that the court below erred in refusing to give the following instructions requested by the defendants:

"While the jury cannot find any negligence against either company because of a train of the Northern Pacific Railway Company going north about 3:35 a. m., still the fact that this train did pass this building at that time, or about that time, is a circumstance to be considered by the jury in considering whether or not some other agency than that of the Oregon-Washington Railroad & Navigation Company's freight train, or the Northern Pacific Railway Company's passenger train, caused the fire.

"The fact that this train did pass the premises going north at the time it did is permissible to be considered by you as a circumstance tending to show that the fire might have been started by a train other than the freight train of the Oregon-Washington Railroad & Navigation Company, or the passenger train of the Northern Pacific Railway Company."

[7, 8] It is not exactly clear on what ground the defendants attribute error to the court below in refusing to give these instructions.

The engineer of the Northern Pacific freight train No. 680, referred to in the instructions requested, and which passed the mill of the plaintiff about 3:35 a. m. on the morning it was destroyed by fire, testified that in passing the mill he was on the side of his locomotive facing it, and that he had not observed any fire at the mill when he passed it. If the defendants sought to establish by the testimony of this engineer that fire had not yet broken forth in the mill of the plaintiff after the lapse of a period of over an hour and a half from the passage of the last locomotive claimed to have caused the fire, the objection falls within the assignment of error disposed of in paragraph 3 of this opinion; the question as to how long sparks might smolder on the roof of a building such as that of the plaintiff being one for the jury. If the objection to the refusal of the court to give these instructions was because the engine of this train might have emitted the sparks that set fire to plaintiff's property, the answer is that there was no evidence whatever that this engine emitted sparks when passing plaintiff's property. But it appears from the interrogatory annexed to the verdict rendered by the jury in this case that this identical locomotive and freight train were included therein, the jury being asked to state—

"whether the fire was started by sparks from the engine drawing Northern Pacific passenger train No. 301, or the engines of Northern Pacific freight train No. 680, or the engine of the Oregon-Washington Railroad & Navigation freight train No. 691."

No instruction was given to the jury with respect to this train and locomotive, and, as we have stated, none was required; but, inasmuch as this train was included in the special interrogatory annexed to the form of verdict, the jury, in concluding that the fire which destroyed the plaintiff's mill was started by sparks from the engine of the Oregon-Washington Railroad & Navigation Company's freight train No. 691, must have taken into consideration the fact that freight train No. 680 of the Northern Pacific had passed the mill at the time designated. And that is exactly what the jury would have been asked to do had the two instructions requested by the defendants been given by the court.

[9] 5. We are of opinion that there was sufficient evidence to sustain the verdict rendered against the Oregon-Washington Railroad & Navigation Company. William Ebert, a witness for the plaintiff, testified that he saw the freight train of that company (No. 691) before it passed the mill of the plaintiff, when it was down by the station about three or four blocks from the mill; that the train came up to the mill while he was watching it; that the locomotive attached to this train was throwing sparks when he first saw it, and that it continued to throw lots of sparks all the way along; that the sparks, as near as he could tell, were about the size of a dime; that the sparks were going in the direction of the mill of the plaintiff; that the passenger train of the Northern Pacific Railway Company (No. 301) passed about 10 or 15 minutes after the freight passed; that when he first saw the passenger train it was a block and a half or two blocks from the mill; that the locomotive attached to it was throwing up a few sparks; that they did not appear to be as big as the sparks thrown up by the locomotive of the

freight train, nor were there so many as from the locomotive of the latter train; that about 15 or 20 minutes after these trains passed he saw fire at the mill; that when he first saw it the fire was located in the roof; that the mill was all open; that he could see under the mill, and there was no fire under the shed at that time.

The testimony of witnesses called on behalf of the defendant Oregon-Washington Railroad & Navigation Company tended to show that the spark arrester and fire apparatus which were constructed in the locomotive attached to its freight train No. 691 on the morning in question were of the best known type and class and were in perfect order. The defendant Oregon-Washington Railroad & Navigation Company, therefore, insists that, as this testimony was uncontradicted by the plaintiff, the testimony disclosed an entire lack of negligence on its part, both in the construction and the operation of its locomotive. But it appears from the testimony of one Fred Zintz, a locomotive inspector in the employ of the Oregon-Washington Railroad & Navigation Company, that no sparks larger than the head of a small match would be able to escape through the meshes of the spark arrester constructed in the locomotive which was attached to train No. 691 of that company on the morning of the fire, and that if sparks larger than that went through the spark arrester to any height or distance, it would show that the spark arrester was not in good condition.

[10, 11] The question of the negligence of the defendant, the Oregon-Washington Railroad & Navigation Company, was submitted to the jury in the following instructions:

"A railroad company is not an insurer of the safety of the property along its line, and could not be held liable for the destruction of property by fire even though such fire is caused by sparks from its engines, unless the engine was improperly constructed or negligently operated, and this must be shown by a fair preponderance of the evidence. * * *

"In order to recover against the defendant the Oregon-Washington Railroad & Navigation Company, the plaintiff must prove: First, that the property was destroyed by fire; second, that this fire was set out and started by a spark or sparks from one of that company's engines; third, that the engine was either defectively constructed, so that it would emit sparks of such a character that the same could be provided against by the exercise of ordinary care and caution on the part of the company, or that the engine was so carelessly and negligently operated by the servants and agents of defendant company that it would emit sparks of such a character that it could have been provided against by the exercise of ordinary care and caution on the part of the defendant company.

"It is a matter of common knowledge that locomotive engines in which coal or wood are used as fuel will emit a certain amount of sparks, and that there has been no device adopted by which all of the sparks generated in an engine will be arrested, but that some of them will escape, although the engine is equipped with spark arrester of an approved pattern, and the engine operated by servants who are reasonably skillful and careful.

"In order to find the defendant the Oregon-Washington Railroad & Navigation Company negligent in the particulars mentioned, it is necessary for you to find that not only sparks escaped from its engine, but you must go further and find that these sparks which did escape were caused to escape by reason of the negligent construction of the engine from which they escaped (that is, you must find that negligence is the proximate cause), and unless you find such to be the fact from the evidence, it is your duty to return a verdict for this defendant, even though you should be of the opinion that

the fire was started by a spark or sparks thrown off from the passing engine of the defendant. * * *

"You are further instructed that, the defendant the Oregon-Washington Railroad & Navigation Company, being engaged in the operation of a railroad, it is its duty under the law to operate its trains upon its tracks, and that if its engines are equipped with spark arresters of an approved pattern, and the spark arresters are in good condition, and the engine was operated in an ordinary skillful manner, then the defendant has performed its full duty under the law, and would not be liable to plaintiff, even though sparks from its engine caused the fire which destroyed plaintiff's property."

We are of opinion that the foregoing instructions were a correct statement of the law applicable to the facts of this case; that whether the defendant Oregon-Washington Railroad & Navigation Company had or had not been guilty of negligence in the construction or operation of its trains was a question for the jury, and that the testimony was fully sufficient to support the verdict arrived at by the jury that the fire which destroyed the mill of the plaintiff was started by sparks from the locomotive of its freight train.

The judgment of the court below is affirmed.